New York State Electric & Gas Corporation, Respondent, *v.* City of Plattsburgh and Others, Appellants.*

Third Department, May 3, 1939.

* Modfg. and affg. 168 Misc. 597.

*Harry P. Kehoe, Corporation Counsel,* for the appellants.

*Pierce & Holcombe [Wallace E. Pierce, Patrick J. Tierney, C. Edward Paxson* and *Jesse J. Holland* of counsel], for the respondent.

PER CURIAM. (This opinion was prepared by the late Justice RHODES. It reflects the sentiment of the majority.) This is a taxpayer's action brought pursuant to section 51 of the General Municipal Law of the State of New York to enjoin the city from taking further proceedings toward the construction of a municipal electric power plant or from issuing its bonds or incurring any obligation therefor on the principal ground that the incurring of the proposed indebtedness would violate the provisions of section 174 of the city charter and section 10▇ of article 8 of the Constitution of the State, as it existed prior to January 1, 1939, by increasing the debt limit beyond the ten per cent permitted thereby. (See same matter, 254 App. Div. 628.) No claim is made of any fraud or bad faith; in fact, the court found that there is none on the part of the defendants.

Certain points are made by appellants, which may be disposed of before considering more serious difficulties. They assert that there is a defect of parties in that the Federal Administrator should have been named as a defendant; that the action was prematurely brought; that no threats had been made by the defendants to do any illegal act which would justify the bringing of the action, and

that plaintiff has an adequate remedy at law. It is sufficient to say that these objections are deemed untenable and, therefore, they are passed over without discussion.

Pursuant to a local law █ of the city, its officials were authorized to construct the power plant in accordance with plans and specifications "theretofore approved by the Common Council and now on file with the City Clerk," at a cost not to exceed $594,000, the estimated cost being the sum of $520,000, and by proper authorization the officials have arranged with the Federal Emergency Administrator of Public Works to finance the project by a grant of $234,000, and by the issuance and sale to the United States government, or to others, of coupon bonds of the city in the principal amount not exceeding $360,000.

The local law which authorizes the project declares that it is adopted pursuant to article 14-A of the General Municipal Law, and that the project is to be constructed in accordance with the provisions of such General Municipal Law, the local law in question, and chapter 782 of the Laws of 1933, the so-called Mandelbaum Act.

The city has not advertised for public bidding on construction contracts for the proposed plant, nor has it issued or sold bonds therefor.

The court, nevertheless, found that the proposed electric plant, if constructed substantially in accordance with the plans and specifications, would cost in excess of the permitted borrowing capacity; that it would cost $687,540, an excess over the maximum of $594,000 permitted and prescribed by the local law in question, and that there was not then available to the city either by loan, grant, bonds or taxes, the amount necessary to construct the proposed electric plant in accordance with the plans and specifications contained in the local law.

Clearly, these findings were prematurely made and should be reversed. Although plaintiff was permitted to introduce evidence indicating that the plant could not be constructed for an amount within the then existing borrowing capacity of the city, it is apparent that the cost could not be known definitely until after the receipt of bids, and any finding as to such cost made prior to the coming in of the bids could be based only on surmise and speculation.

At the time of the trial there were issued and outstanding bonds in the principal amount of $187,000 for the construction of a sewage disposal plant. The resolution of the common council authorizing the sewer bonds recites that, "Pursuant to and in strict compliance with the Constitution and Statutes of the State of New York, including, particularly, the revenue-producing undertaking and

revenue bond law * * * constituting Article 14-C of the General Municipal Law, and the General City Law, the construction of improvements to the sewerage system * * * is hereby authorized."

In accordance with article 14-C of the General Municipal Law the resolution further recites that none of the bonds shall be a debt of the city and the city shall not be liable thereon nor shall such bonds be payable out of any funds other than the revenue pledged thereby, which is to be provided from reasonable rates, fees and charges which are to be established and collected by the city.

As conclusion of law, the court found article 14-C to be constitutional, and refused to find conclusions of law as requested by the plaintiff to the effect that the sewer bonds constituted an indebtedness within the meaning of section 174 of the charter of the city and section 10 of article 8 of the Constitution as it then existed. The plaintiff excepted to such refusal, but did not appeal therefrom; neither did it appeal from the conclusion as to the constitutionality of article 14-C; appellants argue in effect that plaintiff is now precluded from questioning this branch of the law of the case thus established. However, under the provisions of sections 479 and 584 of the Civil Practice Act this court has authority to make such determination and disposition of the case as may be proper.

As already indicated, the judgment in its present form cannot stand in its entirety and the rights of the parties must now be determined in accordance with the amendments of the Constitution of the State which became effective January 1, 1939.

Section 4 of article 8 still fixes the debt limit at ten per cent but has changed the formula so that such ten per cent is now to be based upon " the average assessed valuation of the real estate of such * * * city * * * subject to taxation, as determined by the last completed assessment rolls and the four preceding rolls."

Upon reargument on March 14, 1939, counsel for the respective parties stipulated in writing as to the assessed valuation of the city for the last five years preceding, and the common council of the city has ratified in writing the act of its counsel in making such concession. Therefrom it appears that the average assessed valuation of the city for the period specified by the Constitution is $5,393,205.40 and its debt limit would be ten per cent thereof, namely, $539,320.54; that on the date of the reargument there were bonds of the city issued and outstanding amounting to $270,000, exclusive of water bonds and of the sewage revenue bonds above referred to; and that provision has been made to retire $24,000 of

the outstanding $270,000 during the year 1939. It, therefore, becomes important to determine whether the sewer bonds are to be included as a part of such indebtedness under the provisions of the Constitution as amended.

Regardless of whether such revenue bonds were formerly to be considered as an indebtedness of the city (*Longken, Inc., v. City of Long Beach,* 268 N. Y. 532; *Kelly v. Merry,* 262 id. 151; *Robertson v. Zimmermann,* 268 id. 52), we are now required to decide that question in the light of the amendments to the Constitution.

Section 2 of article 8 now declares that " No indebtedness shall be contracted by any * * * city * * * unless such * * * city * * * shall have pledged its faith and credit for the payment of the principal thereof and the interest thereon."

Section 8 of article 8 states that no such indebtedness, valid at the time of its inception shall thereafter become invalid by reason of the provisions of such article.

Section 5 of article 8 deals with bonds of the character here involved and states in substance that in ascertaining the power of the city to contract an indebtedness there shall be excluded " indebtedness heretofore or hereafter contracted by any * * * city," for a public improvement which shall have yielded during the preceding year net revenue sufficient to cover all costs of operation, interest and amortization. Such bonds certainly are an indebtedness owing to the holders thereof; the city caused such indebtedness to be incurred and no one else is obligated to see that they are paid. Within the meaning of the constitutional amendments referred to, it seems clear that these bonds are to be considered an indebtedness of the municipality.

Paragraph C of section 5 of article 8 of the Constitution, as amended, sets up a formula for determining whether bonds similar to the sewer bonds are to be included in computing the borrowing capacity of the city, and then declares, " The Legislature shall prescribe the method by which the amount of any such indebtedness to be so excluded shall be determined, and *no such indebtedness shall be excluded except in accordance with such determination.*"

So far as appears the Legislature has not prescribed the method of determination and, therefore, the sewer bonds are not to be excluded, but are to be included in the indebtedness of the city in determining its borrowing capacity. Therefore, the amount of $187,000 sewer bonds is to be added to the amount of $270,000 outstanding indebtedness for other bonds, making such total indebtedness $457,000. These figures disclose that the remaining borrowing capacity of the city is $82,320.54, which will be increased in the amount of $24,000 if and when outstanding bonds of the

city in the amount of $24,000 have been retired in accordance with provision for such retirement already made by the city.

The judgment and temporary injunction should be modified so as to permit the city to advertise for bids and upon the receipt of such bids to proceed with the construction of the project at a cost not exceeding the present borrowing capacity of the city amounting to $82,320.54 plus any increase in the borrowing capacity afforded by the paying off of existing indebtedness, to the extent thereof prior to the time of letting contracts for the construction of the plant.

As thus modified the judgment should be affirmed, without costs to either party.

HILL, P. J., BLISS and CRAPSER, JJ., concur; HEFFERNAN, J., dissents from the modification, and votes to affirm the judgment.

Judgment and temporary injunction order modified so as to permit the city to advertise for bids, and upon receipt of such bids to proceed with the construction of the electric power project at a cost not exceeding the present borrowing capacity of the city, amounting to $82,320.54, plus any increase in the borrowing capacity afforded by the paying off of existing indebtedness to the extent thereof prior to the time of letting contracts for the construction of the plant; as thus modified, judgment affirmed, without costs.

The court finds that the total assessed valuation of real property in the city of Plattsburgh, subject to taxation for the five years last preceding is as follows:

| | |
|---|---|
| 1935 | $5,343,823 |
| 1936 | 5,370,456 |
| 1937 | 5,378,281 |
| 1938 | 5,419,572 |
| 1939 | 5,453,859 |

That the average thereof is the sum of $5,393,205.40; that ten per cent thereof, amounting to $539,320.54, constitutes the debt limit of the said city. That on the 14th day of March, 1939, there were bonds of the city issued and outstanding amounting to $270,000, exclusive of water bonds and of sewer revenue bonds $187,000; that provision has been made to retire $24,000 of the outstanding $270,000 of bonds during the year 1939.

The court further finds as a fact and as a conclusion of law that the amount of sewer revenue bonds, amounting to $187,000, constitutes a part of the outstanding indebtedness of the city, making its total indebtedness $457,000;

that the debt limit of the city...................... $539,320 54
less the total outstanding indebtedness of.......... 457,000 00

leaves the remaining borrowing capacity of the city.. $82,320 54
plus any increase afforded by the paying off and retirement of
existing indebtedness if and when made and to the extent thereof.

The court reverses findings of fact Nos. 6, 7, 17 and 19 contained
in the decision and findings of fact Nos. 6, 7, 17 and 19 of plaintiff's
proposed findings of fact and disapproves conclusions of law Nos.
1, 3 and 4 of the decision and conclusions of law Nos. 1, 3 and 4
contained in plaintiff's proposed findings.