MAX BLOOM, Individually and on Behalf of All Other Taxpayers of the City of New York Similarly Situated, et al., Respondents, v. MAYOR OF THE CITY OF NEW YORK et al., Appellants.

Second Department, July 20, 1970.

*J. Lee Rankin, Corporation Counsel (Edward J. McLaughlin, James J. McGowan* and *Rosario J. Renda* of counsel), for Mayor of the City of New York and others, appellants.

*Louis J. Lefkowitz, Attorney-General (Samuel A. Hirshowitz* and *Charles A. La Torella, Jr.,* of counsel), appellant in person, and for State Board of Equalization and Assessment, appellant.

*O'Dwyer & Bernstien (W. Bernard Richland* of counsel), for respondents.

HOPKINS, J.   Plaintiffs are taxpayers in the City of New York. They sue for a judgment declaring that the tax levy of the defendant City of New York adopted in June, 1968 is invalid and that the determination of the defendant State Board of Equalization and Assessment made in June, 1968 concerning the equalization ratios of the assessment of real estate for the city during the years 1964, 1965, 1966, 1967, and 1968 is invalid.

The city and the defendant city officials moved to dismiss the complaint and so did the State Board of Equalization and Assessment. The motions contested the complaint for insufficiency and the standing of the plaintiffs to bring the action.

Cast in the structure of a taxpayers' action (General Municipal Law, § 51), the complaint alleges that in 1964 the State board fixed the equalization rate for the city at 74, in 1965 at 72, in 1966 at 72, in 1967 at 72, and in 1968 at 71. Nevertheless, it is alleged, on June 24, 1968 the State board established special equalization rates for the city, acting under chapter 1069 of the Laws of 1968 (eff. June 22, 1968; Real Property Tax Law, art. 12-A), during the same years, i.e., in 1964 at 68, in 1965 at 67, in 1966 at 66, in 1967 at 64, and 1968 at 63. These rates, say the plaintiffs, were determined by the State board without any examination of the actual valuation of real estate in the city, without proper records, and without notice or hearing. As a result of the new determination of the ratios, the plaintiffs alleged that the city adopted a tax levy in 1968 in excess of the limit set by the Constitution (N. Y. Const., art. VIII, § 10) — that is, 2½% of the average full valuation of real estate during the past five years — and thereby violated the constitutional mandate; explicitly, the plaintiffs claim that the statute authorizing the refixation of the equalization rates is unconstitutional.

The gist of the complaint is directed toward the action of the State board and the city under the provisions of the 1968 statute (Real Property Tax Law, art. 12-A). That statute permits the State board, upon application of the city, to establish the equalization rate for the current and preceding four years on the basis of " estimated market values " as the measure of full valuation (Real Property Tax Law, § 1250). The Constitution, on the other hand, in both its sections dealing with debt limitations (N. Y. Const., art. VIII, § 4) and with tax levy limitations (N. Y. Const., art. VIII, § 10) speaks of equalization rates fixed on the basis of " full valuation ", without any reference to " estimated market values ". The Constitution does, however, command that the Legislature shall prescribe the manner by which the ratio shall be determined.

In 1968 when the city applied to the State board for an establishment of new rates under the definition of section 1250 of the Real Property Tax Law (the new statute), the downward movement of the new rates in comparison with the rates fixed for the same years without the use of the definition resulted in a higher base for the calculation of the tax levy. That is to say, a lower equalization rate implies that the assessments bear a lesser percentage to actual full valuation. Hence, as the

plaintiffs argue, the city was enabled to increase its spending power and impose a higher tax levy.

The Special Term denied the motions to dismiss, holding both that the plaintiffs had standing to sue and that the complaint was sufficient to constitute a cause of action. We agree.

The plaintiffs as taxpayers are directly affected by the new equalization rates established in 1968. The use of the formula which section 1250 of the Real Property Tax Law embodies resulted in a higher tax levy and a higher tax bill to the plaintiffs than would have been the fact under the procedure in effect before section 1250 was enacted. Whether the statute is unconstitutional, or whether, if it is found that it is constitutional, the public officers concerned, city and State, acted hastily and without proper foundation in the process of making new determinations under the statute, are both issues in the case. The plaintiffs, though not required to show a direct injury to themselves (*Rogers* v. *Board of Supervisors of Westchester County*, 77 App. Div. 501), allege illegal official acts which will produce public injury (cf. *Di Paola* v. *City of Glen Cove*, 21 A D 2d 678). Indeed, a taxpayers' action has been said to be the proper vehicle to test the legality of local proceedings claimed to infringe the constitutional debt limit or the statutory machinery for the issuance of bonds (*New York State Elec. & Gas Corp.* v. *City of Plattsburgh*, 168 Misc. 597, mod. 256 App. Div. 732, mod. 281 N. Y. 450), as well as the alleged unlawful method utilized in the preparation of an assessment roll (*C. H. O. B. Assoc.* v. *Board of Assessors of County of Nassau*, 45 Misc 2d 184, affd. 22 A D 2d 1015, affd. 16 N Y 2d 779; cf. *Van Deventer* v. *Long Island City*, 139 N. Y. 133, 137). These considerations induce us to hold that the plaintiffs have standing to bring this action against the city and its officials.

But the State board urges that a taxpayers' action cannot be maintained against a State body, citing *St. Clair* v. *Yonkers Raceway* (13 N Y 2d 72, 76) and *Matter of O'Brien* v. *Assessor of Town of Mamaroneck* (20 N Y 2d 587, 596). We think that *St. Clair* makes clear that a taxpayer cannot resist the unconstitutional expenditure of State funds, absent a showing of a personal or direct injury to himself. That does not mean, however, that a State body or officer, charged with the duty to enforce a constitutional provision, is immune from a challenge that it or he is functioning beyond authority (cf. *Sleepy Hollow Val. Committee* v. *McMorran*, 20 N Y 2d 190; *Society of N. Y. Hosp.* v. *Johnson*, 5 N Y 2d 102; *Matter of Guardian Life Ins. Co.* v. *Bohlinger*, 308 N. Y. 174, 183). Here the complaint

alleges that the State board has exceeded the constitutional power of the equalization of assessments delegated to it by the Legislature.

Nor are we of the opinion that *O'Brien* (*supra*) deters the plaintiffs. That case decided that a taxpayer may not review the rate determined by the State board for a municipality (cf. Real Property Tax Law, § 760). There the evidentiary weight to be accorded to the rate in pending proceedings under article 7 of the Real Property Tax Law contesting the local assessments was the primary question before the court. What the present plaintiffs' complaint is toward the State board revolves rather about the hasty and arbitrary manner by which rates already established were modified and the impermissible criteria used by the State board to achieve the modifications. Thus, *O'Brien* was not addressed to the questions arising in this action.*

In short, interlocking claims of constitutional dimensions and statutory violations are aimed by the plaintiffs at both State and municipal officials. As alleged, the plaintiffs' contentions primarily concern the effectuation of a plan, unconstitutional in its effect, to make instantly available to the city greater tax levying and borrowing power. Without the collaboration of both State and city officials, say the plaintiffs, the invalid plan could not have been implemented. Accordingly, the city and State officials were properly joined in the action; and the standing of the plaintiffs to pursue it was correctly adjudged by the Special Term.

It is not without some significance that unless this action is sustained no way would be open to test the validity of the defendants' proceedings. It is scarcely to be expected that the public officials would raise the issue of the legality of their own acts. But to allow them by such conduct to put themselves beyond judicial scrutiny verges on the failure of due process (cf. *Long Is. Coll. Hosp.* v. *Catherwood,* 23 N Y 2d 20, 36, n. 3).

Procedural objections to the form of the action are raised which should now be settled. An action for a declaratory judgment is not necessarily incompatible with an action under

---

* Nor do we think that *Matter of Posner* v. *Rockefeller* (26 N Y 2d 970), decided after the argument of the instant appeal, requires that we reverse the order of the Special Term. In *Posner* State action alone was the subject of the proceeding — indeed, the validity of parts of the State budget. Here, as we have pointed out above, both State action and municipal action of a collaborative nature are challenged by this litigation; and the main thrust of the plaintiffs is directed toward a claimed illegal tax assessed against them by the city.

section 51 of the General Municipal Law. To the contrary, a declaratory judgment action is preferred where the legality and construction of statutes, constitutional infirmities and the propriety of official acts are the points of inquiry and a decision will afford assistance to the municipality and its citizens (*Bradford* v. *County of Suffolk,* 257 App. Div. 777, 779–780, mod. 283 N. Y. 503).

Neither is it a critical defect that the usual avenue of attacking the determinations of State officials is channeled through a proceeding under article 78 of the CPLR. The true question is whether a cause for complaint has been stated; the form of the action or proceeding can be molded by the court (cf. *Matter of Brown* v. *McMorran,* 42 Misc 2d 211, revd. on other grounds 23 A D 2d 661; and see *Matter of Mastrangelo* v. *State Council of Parks,* 21 A D 2d 879). We should not observe nice lines of distinction in characterizing the manner in which the relief is sought (*Matter of Nowak* v. *Wereszynski,* 21 A D 2d 427; *Matter of Strippoli* v. *Bickal,* 21 A D 2d 365). We think that an action for a declaratory judgment provides a full remedy, which the more restrictive focus of an article 78 proceeding cannot envelop. Thus, in a declaratory judgment action the court may not only review the constitutionality of the statute, but also determine whether a public official acted in disregard of the statutory standard, or in excess of the grant of authority, or in violation of due process (*Matter of Lakeland Water Dist.* v. *Onondaga County Water Auth.,* 24 N Y 2d 400, 408; *Matter of Figari* v. *New York Tel. Co.,* 32 A D 2d 434; *Matter of Mandis* v. *Gorski,* 24 A D 2d 181).

We do not entertain any opinion as to the merits of the plaintiffs' claims; all that we now determine is that the plaintiffs' complaint is sufficient and that they have standing to bring their action.

The order of Special Term should therefore be affirmed insofar as appealed from, with one bill of $10 costs and disbursements jointly against appellants appearing separately and filing separate briefs.

CHRIST, P. J., RABIN, MUNDER and MARTUSCELLO, JJ., concur.

Order affirmed insofar as appealed from, with $10 costs and disbursements jointly against appellants appearing separately and filing separate briefs.