Hyman Korn, J.
Defendants City of New York and Metropolitan Life Insurance Company and intervenor-defendant State of New York’s motion to dismiss the complaint and for summary judgment (Nos. 49, 50 and 51 respectively of the Calendar of March 4, 1975) and plaintiffs’ motion for leave to take depositions and for a continuance pursuant to CPLR 3101 (subd [a], par [4]) and CPLR 3102 (subd [f]) (No. 74 of the Calendar same date) are combined and disposed of as follows:
Plaintiffs bring the within action for a declaratory judgment and permanent injunction to declare that chapter 941 of the New York Sessions Laws of 1974 violates the New York State and United States Constitutions and to enjoin defendant Finance Administrator of the City of New York from implementing its provisions and to require defendant Metropolitan to pay the full assessed valuation on its properties (Stuyvesant Town and Riverton Project).
Chapter 941 adds section 423 to the Real Property Tax Law. Its purpose is the prevention of undue hardship and dislocation to the project, the persons and families residing therein and the municipality in which such project is located. It provides that upon expiration of the 25-year tax exemption granted to redeveloping projects pursuant to section 125 of the Private Housing Finance Law (Redevelopment Companies Law of 1942) the real property taxes payable on such projects will be phased out over a 10-year period, at which time they will be fully taxable. Section 423 further subjects the rents in said projects to rent ceilings and guarantees the tenants’ rights to lease renewals pursuant to the Rent Stabilization Law of 1969 (Administrative Code of City of New York, tit YY, ch 51).
The challenged amended complaint sets forth the following four causes of action.
The "First Cause of Action” alleges that chapter 941 violates sections 1 and 2 of article XVIII of the New York Constitution in that said article by its grant of tax exemptions exclusively for slum clearance or low-income housing purposes for a period of up to 60 years authorizes only a limited *545 mandate. Plaintiffs allege that no valid constitutional purpose remains for the extension of tax exemption, without income limitations, since the areas affected are, at present, pleasant residential communities no longer in need of rehabilitation.
The "Second Cause of Action” alleges that chapter 941 discriminates against plaintiffs in violation of the Equal Protection Clauses of the New York Constitution (art I, § 11) and the Fourteenth Amendment of the Federal Constitution in that it confers tax benefits upon owners and tenants of redevelopment projects not granted to other real estate taxpayers and tenants, and that there is no reasonable relationship between said benefits and the purpose set forth in chapter 941 which purpose is predicated upon legislative findings of fact patently contrary to the evidence. Plaintiffs allege that the Riverton project subject to full assessment in 1973-74 demonstrates the same 8% occupancy turnover as before full assessment, and that rents in tax abated projects are 30% lower than rents for comparable nontax abated projects.
The "Third Cause of Action” alleges that chapter 941 violates section 17 of article III of the New York Constitution which prohibits the passage of private or local bills and section 1 of article XVI, which authorizes tax exemptions only by general laws. Plaintiffs allege that chapter 941 is limited and local and benefits only Stuyvesant Town and Riverton, both solely owned by defendant Metropolitan.
The "Fourth Cause of Action” is not considered herein since defendant Metropolitan has not claimed and does not claim a rebate for the previous full assessment paid in 1973-74 by the Riverton project.
Defendants’ answer admits that Stuyvesant Town and Riverton are no longer slum areas and that chapter 941 does confer a benefit upon Metropolitan and its tenants.
Defendants plead two affirmative defenses.
First that chapter 941 is authorized under article XVIII of the New York Constitution since there has been no violation of the 60-year abatement limitation contained therein. The 10-year period provided by chapter 941 brings the total tax abated period to a maximum of 34 years.
Second, defendants allege that chapter 941 is authorized both under the inherent sovereign taxation power of the State and specifically under article XVI of the Constitution which, inter alia, authorizes the Legislature to alter tax exemptions.
*546 The crux of plaintiffs’ challenge to chapter 941 is threefold: (1) It does not further the slum clearance purpose set forth in article XVIII, interpreted as meaning physical rehabilitation, which plaintiffs contend is the exclusive authority for legislative support of housing redevelopment companies. (2) It serves no other valid legislative purpose and establishes an arbitrary classification which bears no rational relation to the legislative purposes and findings of fact stated in its preamble. (3) It is intended solely and exclusively as a private local law for the benefit of defendant Metropolitan and the tenants of Stuyvesant Town and Riverton and that, in fact, the aforementioned legislative purposes and findings of fact are mere inventions, demonstrably false and contradicted by the objective evidence.
In connection with their equal protection arguments (No. 2 above), plaintiffs have moved to take the depositions of State Senator Roy Goodman and City Housing and Development Administrator Roger Starr and for a continuance of defendants’ present motions for summary judgment. In addition to their other arguments defendant City and State of New York contend that plaintiffs lack standing to bring the within action.
All of the afore-mentioned issues are set forth at length and with great force by the plaintiffs and disputed sharply and massively by defendants.
At the outset, defendants’ contention of lack of standing is without merit. Plaintiffs are owners and tenants, real estate taxpayers of the City of New York affected by the exemption bestowed on defendant Metropolitan in that they must bear a proportionately greater tax burden. As such they have a sufficiently concrete aggrievement to bring the within action against both the city and the State. (Matter of Dubbs v Board of Assessment Rev., 46 AD2d 651; Bloom v Mayor of City of N. Y, 35 AD2d 92, affd 28 NY2d 952.)
Admittedly, the full value of taxable realty in New York is 82.5 billion dollars. The plaintiffs have paid taxes of only $14,117.53 and defendant Metropolitan’s tax exemption under chapter 941 is 5.5 million dollars for the fiscal year 1974. However, the fact that plaintiffs’ economic stake is small and their tax rate is not demonstrably affected, does not deprive them of standing to bring suit. (Matter of Dubbs v Board of Assessment Rev., supra.)
This is particularly so under the circumstances herein, *547 where the State became a party to the action by intervening as a defendant. The State may not deprive plaintiffs of their right to bring their action merely by such intervention.
The cornerstone of plaintiffs’ contention with respect to article XVIII of the New York Constitution is that it is the exclusive source of validity for chapter 941, that is for legislative power to grant tax exemptions to redevelopment company projects. Based upon this premise plaintiffs urge that chapter 941, without income limitations, does not fulfill the slum clearance purposes of article XVIII and is therefore unauthorized.
Defendants vigorously oppose plaintiffs’ interpretation and urge that chapter 941 is authorized by article XVIII since it is within the 60-year limitation thereof. In addition, defendants construe chapter 941 as a taxpayer protection statute, part of an on-going scheme of neighborhood rehabilitation and therefore within the authorized slum clearance purpose of article XVIII. They further maintain that chapter 941 is implicitly authorized by the State’s sovereign power to tax and to exempt from taxation and specifically authorized under article XVI of the New York Constitution which authorizes legislative alteration of tax exemption.
Upon analysis, plaintiffs’ position is untenable. An examination of the language of article XVIII reinforces the view taken by defendants, as does the examination of article XVIII together with article XVI, and in the context of the history of the State’s exercise of its inherent power to exempt from taxation in the housing area. The development of tenant protection legislation and the original Redevelopment Companies Law of 1942 serve to demonstrate that defendants have not stretched the constitutional language of article XVIII beyond its permissible scope.
As plaintiffs contend, article XVIII brought together a number of legislative powers and forged them into a unified constitutional weapon. Section 2 of article XVIII includes, inter alia, the power of condemnation and authorizes subsidies, loans and guarantees. It is not necessary to consider herein, whether or not article XVIII is the exclusive and seminal source of any of the other powers authorized. However, to regard article XVIII as the exclusive repository of the State’s tax exemption power constricts the entire tenor of the article and necessitates a narrow construction of not only the *548 words of article XVIII but article XVI and the inherent taxing power of the State as well.
It is undisputed that section 10 of article XVIII has not been judicially construed. However, the clear language of section 10 demonstrates it is a permissive article of authorization and not limitation. "This article shall be construed as extending powers which otherwise might be limited by other articles of the constitution and shall not be construed as imposing additional limitations”. Further, sections 1 and 2 are subject only to the limitations of the article itself "notwithstanding any provision in any other article”. Moreover, article XVI, specifically, providing that the State "may” alter and repeal tax exemptions is permissive.
Despite plaintiffs’ contentions, article XVIII is not the origin of the State’s tax exemption power in the area of housing. Prior to 1938, the year of its enactment, the inherent use of sovereign power in this area was repeatedly sanctioned by the courts. (See, e.g., Matter of New York City Housing Auth. v Muller, 270 NY 333; Hermitage Co. v Goldfogle, 204 App Div 710, affd 236 NY 554 [new residential construction exempt from taxation in response to housing emergency].)
Thus, articles XVIII and XVI are permissive and flexible; admittedly, an umbrella for legislative creativity and reinforces defendants’ contention that article XVIII was not intended to deprive the State of its otherwise inherent power to achieve valid purposes in the field of housing.
With regard to the limitation of article XVIII to its slum clearance or low-income housing purposes, once again, its examination in context together with the Redevelopment Companies Law of 1942 demonstrates the inadequacy of plaintiffs’ interpretation restricting said slum clearance purpose to the physical reconstruction and rehabilitation of buildings. Section 1 of article XVIII states as its purpose in pertinent part: "the clearance, replanning, reconstruction and rehabilitation of substandard and insanitary areas”.
Plaintiffs admit that if chapter 941 contained income limitations, no challenge to the validity of article XVIII would be possible because the 60-year limitation, inserted to prevent the surrender in perpetuity of the State’s taxing power, is not violated. In effect, plaintiffs claim that although a shift of purpose is permissible as long as it is within the 60-year limitation, an expansive interpretation of the original valid purpose is not permissible. This is not a persuasive argument.
*549 It is undisputed that article XVIII enabled the passage of the Redevelopment Companies Law of 1942. Said statute was specifically declared constitutional without income limitations under the slum clearance purpose of article XVIII. (Matter of Murray v La Guardia, 291 NY 320, cert den 321 US 771.)
Section 101 of the Redevelopment Companies Law sets forth as its purpose, inter alia, that the public interest requires neighborhood rehabilitation and that said neighborhood rehabilitation is essential to the protection of the financial stability of the municipality. For this purpose the Legislature set a 25-year period of tax abatement and provided a series of ongoing statutory controls. The statute further provided that upon its expiration all controls as well as tax abatement would cease. (Private Housing Finance Law, § 123.)
It is well known that New York State has long suffered a housing emergency. A consideration of this chronic condition and some examples of the legislative responses thereto demonstrate that chapter 941 is within the category of tenant protection legislation, and as such, part of an ongoing scheme of neighborhood rehabilitation. (For example, legislation to stop abandonment, see Matter of 241 East 22nd St. Corp. v City Rent Agency, 33 NY2d 134 and I.L.F.Y. Co. v Temporary State Housing Rent Comm., 10 NY2d 263.)
Perhaps the strongest analogy here is the rent control amendments whose thrust, like that of chapter 941, is to facilitate the transition from regulation to a free market. Cf. Matter of 241 East 22nd St. Corp. v City Rent Agency (supra) and the long list of cases upholding rent control without regard to tenants’ income. (Matter of 89 Christopher Inc. v Joy, 35 NY2d 213; Plaza Mgt. Co. v City Rent Agency, 25 NY2d 630; Matter of Hartley Holding Corp. v Gabel, 13 NY2d 306.)
Plaintiff does not dispute that the existence of a continuing housing emergency was last reaffirmed by the Legislature in 1974 and adopted by a resolution of the City Council.
In this context succeeding Legislatures have enacted, with city approval, statutes affecting redevelopment companies whereby the tax exemptions are tapered off rather than abruptly halted. (See L 1972, ch 641; L 1973, ch 471; L 1974, ch 576, § 4 [Emergency Tenant Protection Act of 1974].)
Therefore, the 25-year program of neighborhood rehabilitation of the Redevelopment Companies Law was not conceived *550 or carried out as only a narrow program of physical reconstruction and is not required to be interpreted as such in contradiction of the Legislature’s determination that 10 years more is required to maintain the economic stability of neighborhoods.
Plaintiffs’ contention that chapter 941 is violative of the Equal Protection Clause of the State and Federal Constitutions must be considered within the boundaries of settled law. It is an axiomatic rule of statutory construction that statutory language must be read so as to make it meaningful and rational and must be construed so as to give it some useful purpose within the entire spirit of the enactment. In addition, the strong presumption in favor of the validity of an act of the Legislature is well established, as is the tradition of judicial reluctance to look behind the statement of purpose and findings of fact set forth unless they are palpably without reasonable foundation.
It is with respect to this issue that plaintiffs claim to raise triable issues of fact and claim to require deposition and discovery in order to obtain information exclusively within the knowledge of defendants. However, plaintiffs fail to demonstrate that the Starr and Goodman affidavits show any exclusive knowledge of facts bearing on the intention of the Legislature. No single specific fact is alleged by the plaintiffs to be within the exclusive knowledge of either Senator Goodman or Administrator Starr. The post-enactment statements of Senator Goodman and Housing and Development Administrator Starr are not an index of legislative purpose. They are relevant only to their own personal motivation and it is undisputed that courts will not inquire into the motivation of legislators. Further, there is no assertion that any of the defendants exclusively control any specific factual data essential to the plaintiffs.
The basic issue with respect to equal protection is whether there is a rational basis for the finding of fact and statement of purpose and whether the classification established, i.e. redevelopment projects, has a rational relationship to achieving the stated purpose of the statute. Assuming, as plaintiffs contend, that the presumption in favor of legislative findings of fact is rebuttable and subject to judicial inquiry, still plaintiffs fail to demonstrate the essential nature of their need for discovery proceedings. Rather their formidable array of legislative history and exhibits in support of their contention, *551 fail to raise a triable issue of fact. The thrust of their claim is that chapter 941, despite its stated purpose is merely a private law designed solely and exclusively to benefit the defendant Metropolitan and the tenants of Stuyvesant Town and River-ton. However, it is undisputed that chapter 941 is a general law by its terms. It provides (§ 3): "This act * * * shall apply to all redevelopment company projects”. It is further undisputed that there are 16 other redevelopment companies eligible to benefit under chapter 941 in the State of New York and that in fact "Hillsdale Houses”, although not named a defendant herein, has taken advantage of its provisions. Further, the numerous exhibits offered by plaintiffs such as Housing and Development Administration legal memoranda, New York Times articles, and local Stuyvesant Town newspaper articles, demonstrate only that there were lengthy and painstaking negotiations, open debate in the City Council and an over-all concern for neighborhood stability and the ability of moderate income persons to continue to live in New York City in these times of galloping inflation and 20% increases in operating expenses. The exhibits further demonstrate concern for the substantial number of retired persons on fixed income, resident in redevelopment projects and that all of the above was weighed and considered against the awareness of the fiscal crisis in the City of New York. The prior legislative history offered in abundance by plaintiff does not reveal anything material to chapter 941, but merely is an attempt to establish a type of unconstitutionality by association. That is, as prior bills failed to pass the Legislature because of doubts as to their constitutionality then the Legislature must have had doubts about the constitutionality of chapter 941. These merely conclusory interpretations are insufficient to rebut the presumption of the constitutionality of chapter 941.
Indeed, plaintiffs, in effect, have buttressed defendants’ contention that chapter 941 has a self-evident rational basis.
The Legislature possesses wide discretion in selecting subjects for taxation and in granting exemptions therefrom. (Matter of Association of Bar of City of N. Y. v Lewisohn, 34 NY2d 143 and cases cited therein; Lehnhausen v Lake Shore Auto Parts Co., 410 US 356.)
In view of all the foregoing, redevelopment projects represent a rational classification eligible for tax abatement. Therefore, chapter 941 does not violate article XVIII of the New York State Constitution or the Equal Protection Clauses of the *552 State or Federal Constitutions and it is not a private law in violation of section 17 of article III and section 1 of article XVI of the New York Constitution.
Accordingly, plaintiffs’ motion is denied and defendants’ motions for summary judgment are granted.