Fuchsberg, J.
(dissenting). I join in the dissenting opinion of Judge Cooke that, for the reasons he has stated there, plaintiff’s pleading of a cause of action in prima facie tort should have survived the motion to dismiss. Even if that were not so, I believe plaintiff also stated a good cause of action based on *895 section 1983 of title 42 of the United States Code[1] and that, as requested by plaintiff, his amended complaint should be regarded as though his case had been formally brought under that statute as well.
Of course, New York courts have just as much power and obligation to entertain causes of action based on Federal statutes when these fall within our general subject matter jurisdiction as do the Federal courts. (Testa v Katt, 330 US 386; see, also, General Oil Co. v Crain, 209 US 211; McKnett v St. Louis & San Francisco Ry., 292 US 230.) We ought not decline to do so on narrow grounds, as I respectfully suggest the majority has done in this case, because I believe it would be preferable if matters of such vital State concern, as the case before us represents, were shaped by our own State courts.
Further, we possess the power to convert this action into one brought under section 1983, if petitioner has pleaded sufficient facts to make out a prima facie case under that statute, notwithstanding the failure of his complaint to label the cause as such. (See CPLR 103; Matter of First Nat. City Bank v City of New York, 36 NY2d 87, 94; Bloom v Mayor of City of N. Y., 35 AD2d 92, affd 28 NY2d 952.)
In essence, plaintiff’s complaint, as presently drawn, alleges that he was serving in his second year as a probationary teacher, that he was assigned as faculty adviser to students producing the annual yearbook, that what the principal chose to regard as an unflattering and slightly irreverent picture of himself appeared in that book, that plaintiff was immediately informed that he would be fired for permitting the students to publish the picture unless he resigned, and that he was so terminated. Plaintiff had received from his superiors an unequivocally excellent rating as a teacher and a letter informing him that he would be reappointed for his third probationary year shortly before the yearbook was published. Immediately after its publication, a special school board meeting was called so that the superintendent could recommend that plaintiff not be rehired; this meeting took place, post haste, only a day *896 before the effective date of section 3031 of the Education Law, the effect of which was avoidance of the newly-enacted requirement of that law that a probationary teacher who is not to be rehired be given reasons in writing for the severance. Plaintiff also notes that considerable publicity, detrimental to him personally and professionally, occurred as a result of this sequence of events. The facts alleged in the complaint itself thus establish a prima facie case that plaintiff was not rehired solely because of his association with the publication of the principal’s picture. If so, then plaintiff’s first amendment rights may well have been violated.
Teachers may not be dismissed for engaging in communicative activity in connection with their jobs unless the communication in issue threatens a material and substantial disruption of orderly educational processes. (See, particularly, James v Board of Educ., 461 F2d 566 [no relation to this petitioner].) It may be that at trial, the defendants could succeed in proving that the publication of a mildly unflattering picture of the school’s principal constitutes such a threat to essential educational order, but it suffices for our purposes here that plaintiff has alleged a protected activity as the basis for his termination by the defendants.
Nor is it controlling that the picture in issue was published by the students and that publication itself was not suppressed. Plaintiff’s role as adviser to a student publication is still susceptible to First Amendment analysis. Section 1983 has been consistently interpreted as protecting teachers from discipline for utilizing unconventional methods in carrying out their duties. Whether such protection is perceived as "academic freedom”, "due process” or "free speech”, it exists. Thus, teachers discharged for assigning controversial books or using controversial language have been afforded relief under section 1983. (Keefe v Geanakos, 418 F2d 359; Parducci v Rutland, 316 F Supp 352.) Criticism of the administration in news publications and even before legislative committees had been protected. (Perry v Sindermann, 408 US 593.)
If plaintiff shared the students’ views which led to the publication of the disputed picture, then its publication is his act as surely as it is the students. It may be, however, that plaintiff simply believed, as a matter of pedagogy, that students are entitled to a full expression of their own views without censorship and considered his permissive role an object lesson in civics. Whether one assimilates his role to *897 actual criticism of the administration, albeit at least arguably much milder and less potentially disruptive than that protected in Perry and James, or whether one describes it as an example of unconventional methods, it constitutes an act of expression ascribable to plaintiff personally.
Such expression of views by a teacher occupies an honored place in our lexicon of First Amendment rights. In Keyishian v Board of Regents (385 US 589), the United States Supreme Court stated: "That [academic] freedom is therefore a special concern of the First Amendment, which does not tolerate laws that cast a pall of orthodoxy over the classroom” (at p 603, citing Shelton v Tucker, 364 US 479). "The result must be to stifle 'that free play of the spirit which all teachers ought especially to cultivate and practice’ ” (at p 601, citing Wieman v Updegraff, 344 US 183). "But 'even though the governmental purpose be legitimate and substantial, that purpose cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved’ ” (at p 602, citing Shelton v Tucker, supra).
Nor is plaintiff’s status as a probationer a barrier to his suit. The Supreme Court, in Perry v Sindermann (408 US 593, supra) very carefully drew the distinction between what a probationary teacher who is not rehired must show when no reasons for the refusal to rehire are given, and what such a teacher must show when a First Amendment right appears to be the focus of the refusal. In Board of Regents v Roth (408 US 564), a companion case to Perry, a probationary teacher, given no explanation for his termination, wished to obtain a hearing in order to find out the reason; he was required by the court to show that either a property right or a personal liberty had been infringed. The court noted that ordinarily a probationary teacher has no property right in his job, but stated that, where a termination is effected in such a manner as to cast aspersions on the teacher’s personal morals or honesty or in such a way as to make his or her continued employment unlikely, damage to reputation, a personal liberty, has occurred. Due process rights, including the right to a hearing, then attach. Roth was unable to demonstrate any such infringement; plaintiff here, given his allegátions of undeserved publicity and inability to find another job as a teacher,[2] is entitled to the right to do so.
*898 It is under Perry, rather than Roth, however, that his primary allegations fall more exactly. In Perry, as noted, the teacher, who was a probationer, alleged that his criticism of the administration was the reason for his termination. The Supreme Court held that, where the allegations establish, prima facie, an infringement of First Amendment rights, a sufficient nexus to the Federal Constitution has been made out, and no property or liberty infringement connection to the due process clause of that Constitution is required. The teacher’s status as a probationer is, in this instance, "immaterial to his free speech claim.” (Perry v Sindermann, supra, at p 598.) Here, as in Perry, the allegation of a First Amendment threat is sufficient to require a trial, and summary judgment is inappropriate.
It should be remembered, however, that a section 1983 cause lies only against individual members of the board of education and not against the board as an entity (Monroe v Pape, 365 US 167). James has sued only the board as such and not its members individually. He has, however, named the superintendent of schools personally. Since that defendant was required to recommend termination to the board before any action it took was valid, the superintendent may be held to have acted under color of State law and is a legitimate defendant to a suit under section 1983. (Education Law, § 3012; US Code, tit 42, § 1983; High v Board of Educ., 35 F Supp 849; Matter of Kaminski, 6 Ed Dept Rep 161; Matter of McManus, 64 NY St Dept Rep 99.)
Such a defendant is not immune from suit under section 1983, even though he might be so under State law, for it is Federal immunity standards which we must apply. (Wood v Strickland, 420 US 308, 314, 318; Dice v Akron, Canton & Youngstown R.R. Co., 342 US 359; Brown v Western Ry. of Ala., 338 US 294.) Federal standards for immunity under section 1983 were recently set forth by the Supreme Court in Wood v Strickland (supra) where it was held that, in order to claim immunity, an official must be found to have acted in good faith. That does not mean that malice has to be proved against him, in order to negate good faith. It is enough if it is shown that the official acted either with the knowledge that the action infringed a constitutional right or under such *899 circumstances that he should have known the right was of constitutional dimensions. The court made very clear that school officials are presumed to know the basics of constitutional law, especially as these have been applied in familiar and frequently occurring school situations (pp 321-322). And whether a particular defendant acted in good faith is ultimately a question for the trier of the facts (Scheuer v Rhodes, 416 US 232).
I would therefore reverse the order below and remit the case for further proceedings consistent herewith.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones and Wachtler concur; Judge Cooke dissents and votes to reverse in a separate opinion in which Judge Fuchsberg concurs in another separate opinion.
Order affirmed, with costs, in a memorandum.

. Section 1983 of title 42 of the United States Code reads: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proceeding for redress.”

. I note that at least one New York court has held that the termination of a probationary teacher on the grounds that her services were unsatisfactory meets the *898 test of injury to reputation set forth in Board of Regents v Roth (408 US 564, supra) since it has the effect of barring the teacher from future employment in the same local area and perhaps elsewhere as well. (Aster v Board of Educ., 72 Misc 2d 953.)