Jasen, J.
These appeals arise from an amendment to the City of New York’s Bent Begulations dealing with the method of computing a “ hardship ” increase in building-wide rent and allocating the increase to individual housing accommodations under the maximum-base rent (MBB) computerized system of rent control.[1]
The principal issues are (1) whether chapter 1012 of the Laws of 1971, insofar as it reposes in the State Housing Commissioner, a power of approval for any new rent control regulations that are “ more stringent or restrictive ” than those previously in force, is consonant with the home rule provisions of the State Constitution (N. Y. Const., art. IX, § 2, subd. [b], par. [2]), and constitutes a valid delegation of legislative authority with sufficiently definite standards ? (2) If so, whether respondent State Housing Commissioner’s determination that Amendment 33 was more stringent and restrictive than existing regulations and his withholding of approval thereof were reasonable?
Pursuant to chapter 1012 of the Laws of 1971, the State Commissioner of Housing and Community Benewal withheld approval of the amendment as being “ more stringent or restrictive ” than regulations previously in force in that it might bar, or limit the collectibility of, a hardship increase in rent available under existing regulations, without compensating the landlord for the loss.
In Matter of Kerr v. Urstadt, Special Term, inter alla, declared chapter 1012 constitutional and vacated and annulled *139 the commissioner’s determination as arbitrary. The Appellate Division modified by reversing so much of the judgment and orders as vacated and annulled respondents’ determination.
In Matter of 241 East 22nd Street Corp. v. City Rent Agency, Special Term dismissed a petition seeking to compel the City Rent Agency to process certain applications for hardship increases in accordance with regulations in effect prior to the adoption of Amendment 33, and the Appellate Division reversed.
There should be an affirmance in both cases. Chapter 1012 of the Laws of 1971 is general legislation applicable to cities of 1,000,000 or more and does not offend the home rule provisions of the State Constitution dealing with limitations upon the power of the Legislature to enact special legislation affecting the property, affairs or government of any local government. Nor does chapter 1012 confer unbridled discretion upon the State Housing Commissioner so as to constitute an unlawful delegation of legislative authority. As found by the State Housing Commissioner and by both courts below, under Amendment 33 a “ hardship ” increase for a rent-controlled building may be assessed only against those apartments which, under the MBR computerized system of rent control, have not yet reached their individual maximum base rent. The effect would be to bar or limit the collectibility of an increase in rent which is warranted under previous regulations without compensating the landlord for the loss of rent to which he is entitled. As such, Amendment 33 is more restrictive or stringent than prior regulations, and the Commissioner of Housing acted within his authority in withholding approval. In light of the housing crisis in New York City, attributed in large measure to uneconomic rents which result in inadequate maintenance and repair of otherwise sound buildings, the commissioner’s action cannot be said to be arbitrary. Amendment 33 being invalid, it follows that petitioners in the related proceeding are entitled to have their “ hardship ” applications processed in accordance with regulations previously in effect.
In July, 1970, the City of New York adopted Local Law 30, effecting major changes in its rent control laws. The changes were precipitated by several studies indicating massive housing disinvestment or abandonment attributable in large part to uneconomic rents. One feature was the immediate infusion of *140 funds to those apartments with the most inequitably low rents. Another major feature, more pertinent to this appeal, concerned the adoption of a computerized system of rent control — the MBB system — providing for establishment of maximum base rents (MBB) for each rent-controlled building in the city, and, on the basis of a complex formula, equitable allocation of this building-wide MBB to individual controlled units within the building yielding an individual unit or apartment MBB. (Administrative Code of City of New York, § Y51-5.0, subd. a, par. [3].) The landlord’s assured return on capital value was also increased from 6.0% to 8.5%. (Id., § Y51-5.0, subd. g, par. [1], cl. [a].) Individual apartment rents were permitted to rise automatically to their computer determined MBB at the rate of 7%% per year. (Id., § Y51-5.0, subd. a, par. [5].) Maximum rents which are already at or above the computed MBB remain unchanged until the MBB, as adjusted from time to time pursuant to Bent Begulations, exceeds the current maximum rent. (Id., §• Y51-5.0, subd. a, par. [6].)
On July 2, 1971, the Legislature enacted chapter 1012, which • provides in relevant part: “No housing accommodations presently subject to regulation and control pursuant to local laws or ordinances adopted or amended under authority of this subdivision shall hereafter be by local law or ordinance or by rule or regulation which has not been theretofore approved by the state commissioner of housing and community renewal subjected to more stringent, or restrictive provisions of regulation and control than those presently in effect. ’ ’ This provision, in effect, reposes a veto power in the State Housing Commissioner over regulations affecting controlled accommodations when the proposed regulation is more stringent or restrictive than the provisions previously in force. Conversely, it allows him, in his discretion, to approve a more restrictive or stringent regulation.
Amendment 33 to the City of New York’s Bent Begulations, effective January 1, 1972, amended the provisions dealing with (“ hardship ”) adjustments based on net annual return to the owner-landlord to conform them to the procedures and standards of the MBB system. Former section 33.5 was revoked and anew section 33.5 added. It provided for “ hardship ” adjustment in rent where the landlord’s actual cost experience for an entire building indicated a greater entitlement than that pro *141 vided by the MBR formula. In conformity with Local Law 30 of 1970 (id., § Y51-5.0, subd. g, par. [1], cl. [a]), the rate of return on capital value on which a section 33.5 increase was predicated was increased to 8.5% of equalized assessed value. A new paragraph e was added to section 33, governing the manner of apportioning a [1] ‘ hardship ’ ’ adjustment to the individual units in a building. In pertinent part, it provided that section 33.5 adjustments shall be apportioned to individual apartments in the same manner as the building-wide MBR is distributed to individual apartments. It then added an important proviso: that each controlled unit should bear not more than that portion of the increase as is properly attributable to it whether or not the amount so attributed shall be fully collectible by reason of the 7%% limitation on rent increases in any one calendar year or by reason of the prohibition on increasing the rent of an apartment that already exceeds its MBR. Stated more simply, an apartment at its individualized MBR cannot be assessed its share of the hardship increase even though the building as a whole may not be yielding its prescribed statutory return of 8.5%.
An article 78 proceeding was brought by certain owners-landlords challenging the amendment. Special Term dismissed the petition. (Matter of 241 East 22nd St. Corp. v. City Rent Agency, N. Y. L. J., July 19, 1972, p. 10, col. 1.) The Appellate Division, finding a “ colorable question ” raised regarding whether Amendment 33 subjected controlled housing accommodations to more stringent or restrictive provisions than those previously in force, unanimously reversed and directed that Amendment 33 be submitted to the State Housing Commissioner for approval in accordance with chapter 1012 above. (39 A D 2d 453.) The commissioner reviewed Amendment 33, found it more stringent or restrictive and withheld approval.
Turning to the issues, and assuming intervenor has standing to raise the question, we find no merit to the contention that chapter 1012 violates the home rule provisions of the State Constitution (art. IX, § 2, subd. [b], par. [2]) requiring that special legislation affecting the property, affairs or government of any local government be enacted only upon request, etc., of the local government involved. Chapter 1012 is general legislation applicable to any city of the State having a population of one million *142 inhabitants or more. By its terms, it is general, even though there might be but one city to which it could apply. (New York Steam Corp. v. City of New York, 268 N. Y. 137, 143.) Then, too, the subject of rent control is primarily a matter of State concern and a function of the State at large. (City of New York v. State of New York, 31 N Y 2d 804.) Thus, in both its terms and effect chapter 1012 is general and does not relate to the property, affairs or government of the City of New York within the meaning of article IX (§ 2, subd. [b], par. [2]) of the State Constitution.
Petitioners and intervenor also urge that chapter 1012 constitutes an unlawful delegation of legislative authority without provision of standards to guide the exercise thereof. (N. Y. Const., art. III, § 1.) The standing questibn aside (see Matter of Posner v. Rockefeller, 33 A D 2d 314, 316, affd. 26 N Y 2d 970; City of Buffalo v. State Bd. of Equalization & Assessment, 26 A D 2d 213, 214; Matter of Bond & Mtge. Guar. Co., 249 App. Div. 25, 27-28; Kerr v. Urstadt, 72 Misc 2d 942, 945), we perceive no constitutional infirmity in the statute.[2] The Local Emergency Rent Control Act, which chapter 1012 amends, opens with a clear statement of policy. Recognizing that regulation and control of rents is necessary due to an acute shortage of dwellings, it is declared that “ the transition from regulation to a normal market of free bargaining between landlord and tenant * * * [is] the objective of state policy (L. 1962, ch. 21, § 1, par. 2.) Chapter 1012 facilitates that policy in an important way by removing the threat of stricter controls, thereby encouraging owner investment in the maintenance and improvement of existing housing and stemming the tide of abandonment of sound buildings.[3] In exercising his discretion to approve or withhold approval of a more restrictive or stringent regulation than those previously in effect, the commissioner’s power is necessarily circumscribed by this overriding objective. To be *143 sure, this is a rather broad standard to guide the commissioners discretion. However, in view óf the strong presumption of constitutionality attaching to legislative enactments (Lincoln Bldg. Associates v. Barr, 1 N Y 2d 413), and most importantly, the complexity of the matter of rent controls and regulation, we are persuaded that the standard is sufficient and that the statute should be upheld. (Cf. Matter of City of Utica v. Water Pollution Control Bd., 5 N Y 2d 164.)
The question then resolves itself to determining whether in withholding approval of Amendment 33, the commissioner acted reasonably. If there is any rational basis for his determination, then it must be upheld. (Matter of Fink v. Cole, 1 N Y 2d 48; Matter of Barry v. O’Connell, 303 N. Y. 46; 1 N. Y. Jur, Administrative Law, § 184.) We conclude that there is such a rational basis and, accordingly, that the determination should be sustained.
Chapter 1012 reposes in the commissioner, in the first instance, a "power to make a determination of comparative “ restrictiveness ” or “ stringency ”. Here, there is no question but that Amendment 33 is more stringent or restrictive than regulations previously in effect. Since 1951, city and State rent control laws and regulations had provided for the granting of net annual return hardship increases where the property was not earning its statutorily prescribed return. This adjustment was then subject to a 15% limitation on the increase in maximum rent that could be assessed against an individual tenant in a 12-month period. It was also provided that increases in net annual return were to be apportioned equitably among the tenants giving due consideration to all previous increases in maximum rents by lease or otherwise. That is to say, subject to the 15% limitation, an authorized increase in net annual return would be assessed first against those tenants who had not experienced a recent increase of adjustment in maximum rent. However, this principle was subject to the primary purpose of assuring the landlord his authorized return. Thus, if necessary to assure that return, all tenants could be raised the. 15% maximum, leaving the reconciliation of any inequity to a later proceeding. (Matter of Heyman v. McGoldrick, 281 App. Div. 558.) Amendment 33 changes this by providing that the hardship increase for any one year may be apportioned only against those apart *144 ments that have not yet reached their individual MBR. The effect is, of course, that the owner-landlord may be deprived of an increase, to which he is entitled, without any provision for compensating him for the loss.
Against this background, it cannot be said that the commissioner acted unreasonably in withholding approval of Amendment 33. The thrust of the Local Emergency Rent Control Act, and particularly the 1971 amendments, alluded to above, is to facilitate the transition from regulation to a free market by preventing imposition of stricter regulations which, due to an inadequate return to landlords, inhibit maintenance of existing housing stock. Amendment 33 runs counter to this purpose by denying in certain cases an increase to which the landlord is entitled. This is not a mere hypothetical possibility, as suggested by Special Term, but has basis in fact. Accordingly, the commissioner could reasonably withhold his approval. It follows from what we have said that the petitioners landlords in the related proceeding are entitled to have their “ hardship ” applications processed consistent with the law and regulations absent the challenged amendment.[4]
In both cases, the order of the Appellate Division should be affirmed.
Chief Judge Fuld and Judges Burke, Bbeitel, Gabrielli, Jones and Wachtleb concur.
In each case: Order affirmed, with costs.

. The terms “ hardship ” increase or “ net annual return ” increase are used . interchangeably in this opinion and refer to the increase in total building rental for which an owner may apply to assure his statutorily prescribed return on capital value.

. We have Consistently held that an article 78 proceeding is not the proper vehicle to test the constitutionality of legislative enactments. (E.g., Matter of Kovarsky v. Housing & Development Admin, of City of N. Y., 31 N Y 2d 184, 191.) But as the issue has been briefed and argued, we may consider it. (Id., at p. 193.)

. Chapter 1012 was but a part of a package of bills passed during the 1971 legislative session dealing with this objective. (See, also, L. 1971, ohs. 371-374.)

. We note that the City Council of the City of New York has repealed the Maximum Base Rent provisions of the City Rent and Rehabilitation Law. However, such repeal, effective January 1, 1974, has not mooted the issues presented on these appeals.