OPINION OF THE COURT
Jones, J.
New York City Local Law No. 76 of 1977, the so-called Labor Cost Repeal Law, is invalid because it violated the statutory prohibition against the enactment of local laws subjecting rent controlled housing accommodations to more stringent or restrictive regulation and control than that in effect on June 1, 1971, and was not validated in consequence of its approval by the State Commissioner of Housing and Community Renewal on October 12, 1978.
In 1970 the City of New York enacted Local Law No. 30 which substantially revised the city rent control laws. By its provisions there was required to be established, effective January 1, 1972, a maximum base rent ceiling for each rent controlled apartment (MBR), calculated to provide revenue required for economic operation of the premises together with a stated minimum return on the landlord’s investment. The MBR was to be recalculated every two years thereafter to keep abreast of changes in operating costs. In order to avoid precipitate increases in rents for individual apartments, Local Law No. 30 provided that when the MBR was more than 7Vi% above the rent in effect on December 31, 1971, with certain exceptions not presently relevant, the collectible rent could be increased by no more than 71^% a year.
Local Law No. 30 also provided that, "[notwithstanding any of the foregoing limitations”, maximum rent should be increased by individual upward adjustments ordered by the City Rent Agency when labor expenses incurred under a collective bargaining agreement exceeded the provision for payroll expenses employed in computing the expense segment of the MBR. This supplemental provision has been referred to as the *146 "labor cost pass-along” provision. Forms by which landlords might apply for such labor cost adjustments were not provided by the City Rent Agency, however, and such applications were not accepted until March, 1977 — and then allegedly only after mandamus proceedings had been commenced to compel implementation of the 1970 local law. According to the landlords, the agency represented in March, 1977 that applications would be processed within four weeks after filing and that, in view of such expedited processing, orders issued in consequence (referred to as section 33.8 orders) would be effective when issued. In the summer of 1977 landlords, still unhappy with what they perceived as the snail-like progress being made by the agency, began instituting further CPLR article 78 proceedings to compel it to act on pending applications.
On October 28, 1977 the city counsel adopted the Labor Cost Repeal Law as Local Law No. 76 of 1977. It is this local law which is the subject of the present litigation. In form it purported to "clarify” the legislative intent in the prior enactment of Local Law No. 30 of 1970, namely that it had then been intended that labor cost pass-alongs were to be included in and to be subject to, and were not to be added to, the 1Vi% annual rent increase ceiling and that, as to any labor cost pass-along theretofore granted that had resulted in a rent increase in excess of 7in one year, such increase was void and was to be refunded to the tenant.
The landlord plaintiffs on November 7, 1977 instituted the present action seeking a declaration that Local Law No. 76 of 1977 was invalid as in conflict with a 1971 amendment to the State enabling act (L 1962, ch 21). In 1971 the State Legislature had enacted two amendments to the enabling act which are pertinent for present purposes, contained in chapters 372 and 1012 of the Laws of 1971. Chapter 372 provided in part: "No housing accommodations presently subject to regulation and control pursuant to local laws or ordinances adopted or amended under authority of this subdivision shall hereafter be by local law or ordinance subjected to more stringent or restrictive provisions of regulation and control than those presently in effect.” (Effective June 1, 1971.) By chapter amendment, chapter 1012 amended the foregoing provision by insertion of the underscored portion below, to read in full as follows: "No housing accommodations presently subject to regulation and control pursuant to local laws or ordinances adopted or amended under authority of this subdivision shall *147 hereafter be by local law or ordinance or by rule or regulation which has not been theretofore approved by the state commissioner of housing and community renewal subjected to more stringent or restrictive provisions of regulation and control than those presently in effect.” It is the landlords’ contention that Local Law No. 76, purporting to put the supplemental labor cost pass-along back under the 71A% ceiling, created a more stringent or restrictive provision than that under Local Law No. 30 of 1970 in which the labor cost pass-along had been authorized as an additive above the ceiling. By order of Supreme Court on November 16, 1977, the tenants coalition and the tenants were made parties to the action as intervenors-defendants.
While the declaratory judgment action was pending in Supreme Court, Mr. Justice Arnold Fraiman issued an order on December 13, 1977 permitting landlords who had collected increases under section 33.8 orders theretofore issued to deposit such collections in escrow accounts rather than to make refunds to tenants as directed by Local Law No. 76. Answers were served by defendants and cross motions were made for summary judgment.
On April 6, 1978 Mr. Justice Fraiman granted summary judgment in favor of the landlords declaring Local Law No. 76 of 1977 invalid and enjoining its enforcement, directing the City Rent Agency to issue section 33.8 orders as though Local Law No. 76 had never been enacted, dissolving the December 13, 1977 order (that had permitted escrow deposits) as no longer necessary and providing for collection of increases previously granted but not collected (94 Mise 2d 188). The court declined, however, to include in its order a provision, requested by the landlords, by which section 33.8 orders thereafter granted on applications pending on October 28, 1977 (the date of enactment of Local Law No. 76) would have been effective as of that date, but directed instead only that orders on such applications should be issued pursuant to the law in effect immediately prior to the enactment of the local law. (On April 17, 1978 Mr. Justice Fraiman dismissed the article 78 proceedings instituted in the summer of 1977 to compel the rent agency to process pending section 33.8 applications as moot in view of the disposition in the declaratory judgment action.)
The City Rent Agency promptly served notice of appeal (thereby automatically staying the effectiveness of the judg *148 ment granted at nisi prius), and the landlords cross-appealed. On application of the landlords the Appellate Division reinstated authorization for the escrow of rent increases collected pending disposition of the cross appeals, but denied any other modification of the statutory stay. On June 29, 1978 the Appellate Division unanimously affirmed the judgment of Supreme Court declaring Local Law No. 76 invalid (63 AD2d 953). (On the same day the Appellate Division affirmed the dismissal of the article 78 proceedings as moot.)*
The City Rent Agency, the city and the intervenor tenants then appealed to our court as of right on asserted constitutional questions. We dismissed these appeals on the ground that no constitutional question was directly involved (45 NY2d 818, 822). The City Rent Agency, the intervenor tenants and the landlords applied for leave to appeal. While these applications were pending, the State Commissioner of Housing and Community Renewal on October 12, 1978, asserting authority under chapter 1012 of the Laws of 1971 to validate Local Law No. 76 even if it were deemed to impose more stringent or restrictive regulatory control, announced his approval of Local Law No. 76. The landlords then requested that the new issues raised by this approval be added to the appeal and reiterated arguments that appeals from the Appellate Division order be entertained. We solicited informal submissions from all parties with respect to the addition of the new issues as requested by the landlords. After consideration, we granted leave to appeal to all interested parties, added consideration of the validity of the October 12, 1978 approval to the appeal so entertained, and joined the State Commissioner of Housing and Community Renewal as a party respondent to the appeal.
On Application of the landlords the statutory stay which was triggered by the appeals by the City Rent Agency and the city was modified to continue authorization for escrow deposit of collected rent increases, and in addition to authorize further collection of rent increases granted by section 33.8 orders (subject to escrow deposit) and to direct the City Rent Agency to process pending applications for other section 33.8 orders, again with collection and escrow deposit of all rent increases allowed.
There are thus presented for our resolution three questions: *149 Did Local Law No. 76 of 1977 subject controlled premises to more stringent or restrictive regulation or control than previously existed? If it did is it nonetheless valid in consequence of the approval by the State Commissioner of Housing and Community Renewal on October 12, 1978? If Local Law No. 76 is invalid are the landlords entitled in the circumstances to a direction that section 33.8 orders granting rent increases based on labor cost pass-alongs be given retroactive effect? We address these questions in that order.
We concur in the determination of both courts below that Local Law No. 76 did impose more stringent and restrictive regulatory control than was previously in effect, and for the reasons set forth in the opinion of Mr. Justice Fraiman. We add only that the substance rather than the form of the local law is determinative. The city council’s carefully calculated characterization of Local Law No. 76 as "clarifying” its intent when Local Law No. 30 was enacted must give way to the substantive fact that under Local Law No. 30 as originally enacted authorized rent increases based on labor pass-along were allowed in addition to annual 1Vi% permitted increases, whereas Local Law No. 76 purported to place labor cost pass-along increases under the general 1V2% ceiling.
The courts below had no opportunity, of course, to consider the effect to be given the October 12, 1978 approval of Local Law No. 76 by the State Commissioner of Housing and Community Renewal. We invited briefing and argument, both informally prior to directing enlargement of the appeal and formally on the appeal itself, as to the propriety and desirability of our determining this question on this appeal. It is not contested that this court has jurisdiction to address the issue. (Cf. I. L. F. Y. Co. v Temporary State Housing Rent Comm., 10 NY2d 263, 270; Fruhling v Amalgamated Housing Corp., 9 NY2d 541; F. T. B. Realty Corp. v Goodman, 300 NY 746, and 301 NY 346; Matter of Tartaglia v McLaughlin, 297 NY 419; but see 903 Park Ave. Corp. v City Rent Agency, 31 NY2d 330.) Whether the court should elect to exercise such authority is a separate matter. In opposition it is argued only that it would be advantageous to have the benefit of consideration at nisi prius and then at the Appellate Division; no one suggests, however, that there are aspects of the question which can only be explored at an evidentiary hearing. Persuading us to address and determine the question in this instance is the circumstance that if the October 12, 1978 approval of the *150 State commissioner were legally effective to validate Local Law No. 76 all the issues tendered on the appeal as unenlarged would thereby be rendered moot.
Accordingly we address the merits, the determination of which turns on the significance to be given the insertion in chapter 372 of the Laws of 1971 by chapter 1012 of the same laws of the words: "or by rule or regulation which has not been theretofore approved by the state commissioner of housing and community renewal.” More precisely the question is whether the clause "which has not been theretofore approved by the state commissioner of housing and community renewal” modifies only the words "rule or regulation” added by the amendment or extends as well to the words "local law or ordinance” contained in the provision as initially enacted.
As candidly recognized by the State commissioner, "[u]nlike the package of bills which had just been enacted [the package of rent control bills recommended by the Governor which became chapters 371-374 of the Laws of 1971], this bill [which became chapter 1012] was not accompanied by a Memorandum of the State Executive Department, it was not the subject of comment by any Legislative report, nor was it approved by Governor Rockefeller with any statement of explanation regarding the purpose of this amendment”. It is not disputed that chapter 372 was part of a series of bills prompted by the State’s concern over the abandonment and divestment of controlled housing in New York City attributable in large part to uneconomic rents. The objective of the State legislative action was "[b]y limiting the fear of more stringent control [to] encourage owners to invest in the maintenance and improvement of existing housing units and thereby help to stem the tide of abandonment of sound buildings in the City”. (NY Legis Ann, 1971, p 313.) The original constraint related only to the imposition of further restriction by local law or ordinance. It appears that it was anxiety that the undesired restrictions might also be imposed by local rule or regulation which led to the enactment of chapter 1012. One may surmise that, recognizing the practical difficulty of determining whether a particular, perhaps complex or minutely detailed, rule or regulation was to be classified as more or less restrictive, the Legislature sought to create a practical means for resolving the issue. It decided that, inasmuch as no rule or regulation could stray too far from prescription of local law or ordinance, responsibility for resolving questions as to whether *151 a particular rule or regulation was in conformity with the State’s supervisory concern was properly to be vested in the State commissioner.
It is relevant, although not determinative, that a few weeks after the enactment of Local Law No. 76, the then acting State Commissioner of Housing and Community Renewal, in response to an inquiry from the then Mayor of New York City, stated in the course of an extended opinion letter, dated December 6, 1977: "Thus, it is quite clear that the prior approval of the State Commissioner of Housing and Community Renewal applies to administrative rules and regulations only — not to local laws and ordinances.” Referring to this letter, on December 29, 1977 the Corporation Counsel of the City of New York advised the City Commissioner of Housing Preservation and Development: "In addition to the fact that the language of the above quoted amendment [chapter 1012] refers only to 'rule or regulation’, and not to local law, research of the amendment does not disclose any legislative intention to subject local law to State administrative approval. Nor, in general, is there any such precedent regarding enactments of the City Council.” In subsequent litigation the city took the same position.
The approval of the succeeding State commissioner on October 12, 1978 in response to a further inquiry from the subsequent Mayor, concedes that the "underlying issue is far from clear”, and recognizes that an effort to accomplish the objectives of Local Law No. 76 failed in the Senate in 1978. The State commissioner, without articulation of his rationale, concludes, however: "Having reexamined the matter anew, I have concluded that there is sufficient and reasonable basis to rule that the State Commissioner of Housing does have authority to approve Local Law 76 of 1977. Accordingly I am withdrawing the earlier position on this issue taken by this Division in Acting Commissioner Goldman’s letter to Mayor Beame.” The letter concluded: "pursuant to Chapters 372 and 1012 of the Laws of 1971,1 am hereby approving Local Law 76 of 1977.”
Chapter 1012 as enacted contains the title identification: "An Act to amend the local emergency housing rent control act, in relation to regulations. ” (Emphasis added.) As a matter of distribution of governmental authority, while instances are cited in which the Legislature has vested veto or approval authority over local laws in a State administrative agency or *152 official, no instance is cited when this has been done where the State agency or official exercises no operational responsibility with respect to the subject matter of the local law. To state the proposition baldly — that the efficacy of local legislative action shall depend on acquiescence of a State administrative official — runs counter to normal expectation.
Recognizing that the result might be different had the words added by chapter 1012 initially been included in in chapter 372, we conclude, in the absence of persuasive evidence of legislative intent to the contrary, that the authority of approval of the State Commissioner of Housing and Community Renewal is limited to local rules and regulations and does not extend to local laws or ordinances. Accordingly we hold that the announcement on October 12, 1978 of his approval of Local Law No. 76 does not serve to resuscitate that law.
Finally, we turn to the contention on the landlords’ appeal —that, in the particular circumstances of this litigation, concededly a departure from usual practice, section 33.8 orders granting rent increases in excess of 7 Vi % per year predicated on labor cost pass-along in response to applications pending on October 28, 1977 (the date of enactment of Local Law No. 76) should be made effective as of the date they would have been issued but for the intervention of Local Law No. 76. It must be recognized, on the one hand, that the City Rent Law (Administrative Code of City of New York, § Y51-5.0, subd j) provides: "No increase or decrease in maximum rent shall be effective prior to the date on which the order therefor is issued, except as hereinafter provided”, and that such has in general been the policy in the administration of rent control legislation since World War II. On the other hand, we have held in some circumstances that calculated action on the part of municipal authorities to frustrate rights of applicants may give rise to the invocation of unusual remedies (Matter of Faymore Dev. Co. v Board of Stds. & Appeals of City of N. Y., 45 NY2d 560; Matter of Amsterdam-Manhattan Assoc. v Joy, 42 NY2d 941; Matter of Pokoik v Silsdorf, 40 NY2d 769; Matter of Our Lady of Good Counsel R. C. Church & School v Ball, 38 NY2d 780).
On the record now before us we cannot determine with certainty either that the landlords are not entitled to the relief that they seek, or that they are entitled to such relief in whole or in part. Additionally it may well be that any resolution of their application can only properly be determined on *153 the basis of the facts applicable to the particular controlled premises. Accordingly we affirm the denial of relief by the Appellate Division, but without prejudice to the right of any of the landlords in this action, if he or it be so advised, to apply at Special Term, Supreme Court, on such notice as may be directed, for an order with respect to any particular application for a section 33.8 order directing that the increase in rent granted by the City Rent Agency shall be effective prior to the date of issuance of such order, or for such other or different relief as may be just and proper in the circumstances.
For the reasons stated the order of the Appellate Division should be modified, with costs to plaintiffs on defendants’ and intervenors’ appeals and without costs to defendants or intervenors on plaintiffs’ appeal, and the case remitted to Supreme Court for entry of an appropriate judgment containing the further declaration that the approval of Local Law No. 76 of 1977 by the State Commissioner of Housing and Community Renewal on October 12, 1978 did not validate Local Law No. 76 of 1977.
Chief Judge Breitel and Judges Jasen, Gabrielli, Wachtler, Fuchsberg and Cooke concur.
Order modified, with costs to plaintiffs on defendants’ and intervenors’ appeals and without costs to defendants or intervenors on plaintiffs’ appeal, and the case remitted to Supreme Court, New York County, for the entry of judgment and further proceedings, if any, in accordance with the opinion herein and, as so modified, affirmed.

 (Matter of Sulzberger-Rolfe v Joy, 63 AD2d 1126; Matter of Freedman v Joy, 63 AD2d 1123.)