Rosenblatt, J.
(dissenting). The Court today concludes that a municipality’s reduction in the profits of landlords does not violate the Urstadt Law’s prohibition on “more stringent or restrictive” rent control regulation (L 1971, ch 372, as amended by L 1971, ch 1012 [McKinney’s Uncons Laws of NY § 8605]) so long as the reduction does not “enlarge [ ] the City’s regulatory control” (majority opn, at 227). Because this interpretation comports neither with the language nor the purpose of the Urstadt Law, I respectfully dissent.
There are three problems associated with the majority’s test, and I find them insurmountable. First, there is no basis in the statute or our decisional law for applying such a standard. Second, the Court has not provided a workable rule or yardstick to determine what changes in rent control statutes would be invalid as an impermissible “enlarge[ment]” of regulatory control. Lastly, even under the narrowest definition, the change effected by Local Law 73 (Local Laws, 1997, No. 73 of City of New York) markedly expands the City’s regulatory control.
I need not review the history of the rent control law. The majority writing accomplishes this with skill and scholarship. Undisputably, the State Legislature enacted the Urstadt Law “to facilitate the transition from regulation to a free market by preventing imposition of stricter regulations which, due to an inadequate return to landlords, inhibit maintenance of existing housing stock” (Matter of 241 E. 22nd St. Corp. v City Rent *230 Agency, 33 NY2d 134, 144 [1973] [emphasis deleted]).
The thrust of the Urstadt Law is clear from its text. The first paragraph of Unconsolidated Laws § 8605 (the section that later includes the “more stringent or restrictive” language that is at issue in this case) allows, under certain circumstances, the “establishment and adjustment of maximum rents” (Uncons Laws § 8605).[1] The State Legislature’s later use of “more stringent,” a phrase that appears twice in the section, can refer only to the “maximum rents” authorized earlier in the statute.
In the case before us, Local Law 30 (Local Laws, 1970, No. 30 of City of New York) and the Urstadt Law “entitle [ ]” landowners to have their maximum base rent calculated in accordance with article 12-A of the Real Property Tax Law (241 E. 22nd St., supra, 33 NY2d, at 144). To allow landowners less money than that formula provides is to enact a “more stringent or restrictive” rent regulation. Of course, rent control could be made more stringent by an act of the State Legislature, but passing such an act would require statewide support. The Urstadt Law removes rent control decisionmaking from the level of local government and requires rent control advocates to make their case before the State Legislature.[2] The reason is obvious: The State made the Urstadt promise, and only the State can break or weaken it.
We have previously considered whether a particular measure broke Urstadt’s promise. In 241 E. 22nd St., we held that rendering a class of apartments ineligible for a rent increase was incompatible with Urstadt. We based our conclusion on the obvious economic impact on the landowner. We found the assailed measure objectionable because “the owner-landlord may be deprived of an increase, to which he is entitled, without any provision for compensating him for the loss” (241 E. 22nd St., supra, 33 NY2d, at 144 [emphasis supplied]). Indeed, *231 depriving landowners of a hardship increase did not extend the regulatory power of the City; it merely lowered the landowners’ profits. Nevertheless, this Court held that it violated the Urstadt promise.
Similarly, in Mayer v City Rent Agency (46 NY2d 139 [1978]), we held that the City violated Urstadt by taking away landowners’ ability to pass along a class of costs to tenants. As in 241 E. 22nd St., the Court did not analyze the City’s actions in terms of the City’s regulatory powers. We simply examined the consequences of the legislation, concluding that the measure was incompatible with Urstadt’s purpose (see, Mayer, supra, at 149).
The majority characterizes the measures in 241 E. 22nd St. and Mayer as expanding the City’s regulatory control over landlords (see, majority opn, at 227). But surely the Urstadt Law is violated more plainly and more directly by merely reducing the landowners’ return, as Local Law 73 does. Rent control may involve multitudes of provisions that comprise an elaborate scheme, but we are confronted with an inescapable proposition: By restricting landlords’ economic return in the form of rent, the City is engaging in “more stringent or restrictive” rent control. It cannot be otherwise. As Yogi Berra might have put it, the bottom line is, after all, the bottom line.
The City has sought to justify its position, explaining that the legislation was warranted, to make the capital value calculations more “accurate.” But that is not the issue. The question before us is whether the City broke the Urstadt promise, not whether the City had a good reason for doing so.
The Urstadt Law sought to encourage owners and investors to build and offer rental property by promising that rent control would restrict their profits no more “than those [regulations] presently in effect” (L 1971, ch 372, as amended by L 1971, ch 1012 [Uncons Laws § 8605]). The drafters recognized that unless potential landowners can be reasonably confident about their expected gain, they will withdraw their investments from the real estate market, exacerbating New York City’s housing shortage. An economically rational property owner, lending institution or other business entity would not likely invest in real estate on the strength of a promise that the City’s regulatory powers would not be increased. To property owners and investors, the prospective return — a concept the majority aptly terms “simply the bottom line” (majority opn, at 227) is what counts.
*232 If the City had adopted a rent control regulation allowing landlords to collect 1% on capital value (instead of 8.5%), that regulation, under the majority’s view, would affect only the “bottom line” of the rent control law. Doubtless, however, such a change would eviscerate the revenue scheme, amplify the City’s regulatory control and violate the Urstadt Law. I find it troubling that the majority recognizes that Urstadt guarantees landlords 8.5% of something, but provides no assurance that the “something” will provide the expected return.
Local Law 73 changes the method by which “capital value”— the core element of a landlord’s return under the rent control scheme — is calculated (see, Administrative Code of City of NY § 26-405 [a] [3]). New York City’s rent control regulation allows landlords to collect an amount sufficient to cover their expenses for utilities and taxes, plus a vacancy allowance “and an eight and one-half per centum return on capital value” (id.). The City has adjusted a critical numerical factor — capital value — and thereby upended the very statutory provision that governs profit. By any measure, this change appreciably amplifies the City’s regulatory control.
Accordingly, I would reverse the order of the Appellate Division and grant summary judgment to the Rent Stabilization Association.
Judges Smith, Levine, Ciparick and Wesley concur with Chief Judge Kaye; Judge Rosenblatt dissents and votes to reverse in a separate opinion; Judge Graffeo taking no part.
Order affirmed, with costs.

. “Each city having a population of one million or more, acting through its local legislative body, may adopt and amend local laws or ordinances * * * in respect of the regulation and control of residential rents, including but not limited to provision for the establishment and adjustment of maximum rents, the classification of housing accommodations, the regulation of evictions, and the enforcement of such local laws or ordinances” (Uncons Laws § 8605 [emphasis added]).

. See, e.g., Centennial-Aspen II Ltd. Partnership v City of Aspen, 852 F Supp 1486, 1495 (D Colo 1994); Greater Boston Real Estate Bd. v City of Boston, 428 Mass 797, 799-802, 705 NE2d 256, 257-259 (1999).