5 N.Y.3d 303 (2005)
835 N.E.2d 643
801 N.Y.S.2d 783
In the Matter of KSLM-COLUMBUS APARTMENTS, INC., Respondent,
v.
NEW YORK STATE DIVISION OF HOUSING AND COMMUNITY RENEWAL, Appellant, and WESTGATE TENANTS ASSOCIATION et al., Intervenors-Appellants.
Court of Appeals of the State of New York.
Argued May 4, 2005.
Decided June 14, 2005.
*304 Eliot Spitzer, Attorney General, New York City (Oren L. Zeve, Caitlin J. Halligan and Michael S. Belohlavek of counsel), for appellant.
*305 Himmelstein, McConnell, Gribben, Donoghue & Joseph, New York City (Serge Joseph, Kevin R. McConnell and William J. Gribben of counsel), for intervenors-appellants.
*306 Rosenberg & Estis, P.C., New York City (Gary M. Rosenberg, Jeffrey Turkel and Nicholas Kamillatos of counsel), for respondent.
*307 Patterson, Belknap, Webb & Tyler LLP, New York City (Karl E. Seib, Jr. and Laura J. Wood of counsel), Community Service Society of New York (Juan Cartagena and Risa E. Kaufman of counsel) and Legal Services for New York City Legal Support Unit (Raun Rasmussen and David Robinson of counsel) for Community Service Society of New York and others, amici curiae.
Emery Celli Brinckerhoff & Abady LLP, New York City (Matthew D. Brinckerhoff and Katherine Rosenfeld of counsel), for New York State Tenants & Neighbors Coalition, Inc. and others, amici curiae.
Before: Chief Judge KAYE and Judges CIPARICK, ROSENBLATT, GRAFFEO, READ and R.S. SMITH concur.

*308 OPINION OF THE COURT
G.B. SMITH, J.
In this appeal by the Division of Housing and Community Renewal (DHCR), the issue is whether buildings previously constructed and operated pursuant to the Mitchell-Lama program are made subject to the Rent Stabilization Law of 1969 (RSL) by the RSL itself, or by the Emergency Tenant Protection Act of 1974 (ETPA). We conclude that apartments inhabited continuously since before July 1, 1971 were made subject to stabilization by the RSL, and those in which there has been a vacancy on or after July 1, 1971 were made subject to stabilization by the ETPA. In 1967 and 1968, the predecessor of KSLM-Columbus Apartments, the Westgate Housing Corporation (Westgate), constructed three buildings located at West 96th and West 97th Streets in Manhattan. Tenants first moved into these buildings in 1968. Westgate was a limited profit housing company which constructed and financed these buildings through article II of the Private Housing Finance Law, commonly referred to as the Mitchell-Lama Law. Enacted in 1955, the Mitchell-Lama legislation offered financial incentives to landlords to develop low- and middle-income housing. Incentives included long-term, low-interest government mortgage loans and real estate tax exemptions. In return for these financial benefits, developers agreed to regulations concerning rent, profit, disposition of property and tenant selection. Westgate dissolved in March 1979 and was restructured into KSLM.
In March 1998, KSLM withdrew the buildings from the Mitchell-Lama program and they immediately became subject to rent stabilization. The immediately preceding rent for each *309 apartment became the "initial regulated rent" under Rent Stabilization Law (RSL) of 1969 (Administrative Code of City of NY) § 26-512 (b) (3)[1] and Rent Stabilization Code (9 NYCRR) § 2521.1 (j).[2] In 1998, the average initial stabilized monthly rents for the KSLM apartments were $267, $333, $407 and $522 for, respectively, studio, one-bedroom, two-bedroom and three-bedroom apartments. As a result of withdrawal from the Mitchell-Lama program, KSLM began paying full real estate taxes and interest at market rates. KSLM also "enter[ed] the legislative quagmire which encompasses the New York City and New York State rent control laws" (Matter of KSLM-Columbus Apts. v New York State Div. of Hous. & Community Renewal, 6 AD3d 28, 30 [1st Dept 2004]).
In May 1998, KSLM made three separate applications to DHCR for "unique or peculiar" rent adjustments under the ETPA pursuant to RSL § 26-513 (a). That section provides:
"The tenant or owner of a housing accommodation made subject to this law by the emergency tenant protection act of nineteen seventy-four may, within sixty days of the local effective date of this section or the commencement of the first tenancy thereafter, whichever is later, file with the commissioner an application for adjustment of the initial legal regulated rent for such housing accommodation. The commissioner may adjust such initial legal regulated rent upon a finding that the presence of unique or peculiar circumstances materially affecting the initial legal regulated rent has resulted in a rent which is substantially different from the rents generally prevailing in the same area for substantially similar housing accommodations."
*310 KSLM stated in its applications that its rents were "substantially different from the rents generally prevailing in the same area for substantially similar housing accommodations" since its buildings had been governed by the Private Housing Finance Law for over 29 years and were not economically viable without the section 26-513 (a) adjustment of initial rents.
The DHCR Rent Administrator denied KSLM's applications on February 18, 2000, finding that KSLM was ineligible to apply for relief under section 26-513 (a) because "it became subject to the [RSL] not by virtue of the [ETPA] but by virtue of the [RSL] when the building left the Mitchell-Lama program." In January 2001, the Deputy Commissioner denied KSLM's petitions for administrative review and found that KSLM erred in assuming every housing accommodation is made subject to the RSL by the ETPA if it came out of its exempt status after July 1, 1974.
KSLM brought a CPLR article 78 proceeding challenging DHCR's determination. On June 12, 2002, Supreme Court denied the petition and dismissed the proceeding. The Appellate Division unanimously reversed. It concluded that the jurisdiction of the ETPA covered "any class or classes of housing accommodations. . . exempted from regulation and control under the provisions of the emergency housing rent control law, the local emergency housing rent control act or the New York city rent stabilization law of nineteen hundred sixty-nine" (6 AD3d at 36, quoting ETPA [L 1974, ch 576, § 4, as amended] § 3 [a]). The Appellate Division reasoned that since the buildings in question were clearly exempted from the Rent Stabilization Law, they were covered by ETPA. This Court granted DHCR and the intervenors leave to appeal and we now modify the Appellate Division's holding.

Discussion
The New York City Council enacted the RSL in 1969 (Administrative Code § 26-501 et seq.). Rent stabilization is now administered by DHCR, which has promulgated the Rent Stabilization Code. The 1969 RSL regulated,
"Class A multiple dwellings not owned as a cooperative or as a condominium . . . containing six or more dwelling units which:
"(1) were completed after February first, nineteen hundred forty-seven, except dwelling units . . . (b) *311 subject to rent regulation under the private housing finance law or any other state law" (Administrative Code § 26-504 [a] [1] [b]).
In 1971, the State Legislature determined that new construction had essentially come to a standstill and, in response, enacted three statutes designed to limit local rent regulation, two of which are presently relevant: the Vacancy Decontrol Law (VDL) and the Urstadt Law. The VDL exempted from local rent regulation any housing accommodation that became vacant after June 30, 1971 (L 1971, ch 371). The Urstadt Law barred the adoption of more restrictive regulations on housing accommodations that were already subject to rent regulation (L 1971, ch 372, as amended by L 1971, ch 1012 [McKinney's Uncons Laws of NY § 8605]).
In 1974, the State Legislature recognized the need for rent regulation due to a shortage brought on by high demand. It enacted the ETPA (L 1974, ch 576, § 4), amended the VDL so vacancies on or after July 1, 1971 would be subject to the ETPA, and amended the RSL so owners of units brought under stabilization by ETPA could seek initial legal regulated rent adjustments based on "unique or peculiar" circumstances (L 1974, ch 576, § 12, adding Administrative Code § YY51-6.0.2 [a] [now § 26-513 (a)]). Section 3 of the ETPA allowed New York City to extend rent stabilization to nonstabilized housing after a determination that an emergency (five percent or less vacancy rate) existed. Section 5 of the ETPA allowed stabilization coverage to "all or any class or classes of housing accommodations" with certain exceptions, including rent-controlled apartments for so long as they maintained that status, and apartments in buildings built on or after January 1, 1974. This effectively allowed New York City to bring apartments in buildings of six or more units within New York City's rent stabilization system, including apartments that had been decontrolled under the VDL, were in buildings constructed after 1969 but before January 1, 1974, or became vacant after 1975.
On this appeal, DHCR and intervenor Westgate Tenants Association contend that once KSLM's Mitchell-Lama buildings ceased being subject to the Private Housing Finance Law, they became subject to stabilization by virtue of the RSL of 1969, and that the ETPA does not govern the status of these buildings. If the argument that the 1969 RSL applies prevails, KSLM must apply for an initial legal regulated rent under a hardship standard pursuant to Rent Stabilization Code § 2522.4 (b) and *312 (c), which base "hardship" increases on the relationship between the annual rent and a calculation of either the annual net income or the annual operating expenses of the building, with an increase limit of six percent.
By contrast, KSLM argues that the buildings are not subject to stabilization by virtue of the 1969 RSL but by virtue of the 1974 ETPA and thus are subject to the initial rent adjustment pursuant to RSL § 26-513 (a). If this argument prevails, then, pursuant to section 26-513 (a), KSLM may file an application with DHCR for an adjustment of the initial legal regulated rent. DHCR would then consider the considerable difference between the market rates for apartments located on Manhattan's Upper West Side and current rates in KSLM's buildings.
The issue before us is one of statutory construction and not of deference to DHCR's determination. Where the interpretation of a statute involves specialized "knowledge and understanding of underlying operational practices or entails an evaluation of factual data and inferences to be drawn therefrom," the courts should defer to the administrative agency's interpretation unless irrational or unreasonable (Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 459 [1980]; see also, Matter of Union Indem. Ins. Co. of N.Y., 92 NY2d 107, 114-115 [1998]; Matter of Rosen v Public Empl. Relations Bd., 72 NY2d 42, 47-48 [1988]). By contrast, where, as here, the question is one of pure statutory interpretation "dependent only on accurate apprehension of legislative intent, there is little basis to rely on any special competence or expertise of the administrative agency and its interpretive regulations are therefore to be accorded much less weight" (Kurcsics v Merchants Mut. Ins. Co., 49 NY2d at 459).
We reject petitioner's argument that, but for the 1974 ETPA, the 1969 RSL would be inapplicable to all the apartments in its buildings. It is conceded that all the apartments are subject to rent stabilization, but the question is whether they would have been subject to rent stabilization if the ETPA had never been passed. These are pre-1969 buildings, which, if they had not been Mitchell-Lama buildings, would have been regulated under the 1969 law, and would not have needed the ETPA to bring them under stabilization. The 1969 law (Administrative Code § 26-504 [a] [1] [b]) exempts multiple dwellings that are "subject to rent regulation under the private housing finance law." We agree with DHCR that a building no longer subject to rent regulation under the Private Housing Finance Law loses its exemption under this statute and becomes subject to rent *313 stabilization. Thus, petitioner's buildings would be subject to rent stabilization under the 1969 law, even if the ETPA had never been enacted.
The 1969 RSL's exception for Mitchell-Lama buildings provides:
"[The RSL] shall apply to . . .
"Class A multiple dwellings not owned as a cooperative or as a condominium . . . containing six or more dwelling units which:
"(1) were completed after [February 1, 1947], except dwelling units . . . (b) subject to rent regulation under the private housing finance law or any other state law ..." (Administrative Code § 26-504 [a] [1] [b]).
KSLM argues that this language shows the Mitchell-Lama units were never subject to the RSL and could therefore never revert to the RSL. We reject this argument. It is clear that it was the intent of the Legislature that Mitchell-Lama buildings remain in the rent stabilization system after Private Housing Finance Law withdrawal (see Federal Home Loan Mtge. Corp. v New York State Div. of Hous. & Community Renewal, 87 NY2d 325 [1995] [holding that a building once rent stabilized which lost its cooperative status again became subject to the RSL]). ETPA was enacted to recapture or include within the rent stabilization system housing accommodations that were never rent regulated or that had been decontrolled. The KSLM buildings, built before March 10, 1969, were already under the RSL system when ETPA was enacted. Therefore, ETPA's language did not apply to KSLM buildings apart from the effect of the VDL discussed below.
Rent Stabilization Code § 2520.11 (c), also relied on by the Appellate Division, states: "[H]ousing accommodations in buildings completed or substantially rehabilitated prior to January 1, 1974, and whose rentals were previously regulated under the PHFL . . . shall become subject to the ETPA, the RSL and this Code, upon the termination of such regulation." While this language might be read as implying that former Mitchell-Lama apartments are "made subject to" rent stabilization by the ETPA, we conclude that it means simply that those apartments are "subject to" whatever provisions of ETPA, the RSL and the Code are applicable by their terms. In evaluating the Code provision, we must bear in mind that it is only a regulation, and *314 can only interpret the statute. In other words, the pre-ETPA version of the RSL was applicable to former Mitchell-Lama buildings built before 1969 and the Code cannot change that.
KSLM argues that the Urstadt Law, passed in 1971, would prevent former Mitchell-Lama apartments from reverting to rent stabilization  i.e., that no such reversion could take place if the ETPA did not exist. The Urstadt Law says that "no local law or ordinance shall hereafter provide for the regulation and control of residential rents and eviction in respect of any housing accommodations which are . . . presently exempt from such regulation and control . . . ." (Emphasis added.) It also says that "[n]o housing accommodations presently subject to regulation and control pursuant to local laws or ordinances . . . shall hereafter be by local law or ordinance . . . subjected to more stringent or restrictive provisions of regulation and control than those presently in effect." (Emphasis added.) The Urstadt Law was intended to prevent any new tightening of rent regulation after 1971, not to prevent the expiration of an exemption from rent stabilization that was already in existence in 1969.
At the time of the Urstadt Law's enactment, the RSL was the default rent stabilization regulatory scheme. Halting its application to exempt units whose expirations were certain to occur would read too much into the Urstadt Law in that the Legislature was attempting to end rent stabilization in New York City. This simply was not the case. This Court has explained before that the objective of the Urstadt Law was to limit the fear of "more stringent control [to] encourage owners to invest in the maintenance and improvement of existing housing units and thereby help to stem the tide of abandonment of sound buildings in the City" (City of New York v New York State Div. of Hous. & Community Renewal, 97 NY2d 216, 226 [2001], quoting Mayer v City Rent Agency, 46 NY2d 139, 150 [1978]). Therefore, we reject KSLM's argument that the enactment of the Urstadt Law prevented the RSL's application once the Private Housing Finance Law exemption ended.
KSLM argues, in the alternative, that at least as to apartments that became vacant on or after July 1, 1971, the 1969 RSL is inapplicable. The VDL, effective June 30, 1971, provided simply: "housing accommodations which become vacant shall be exempt from regulations and control . . ." (L 1971, ch 371, § 6). But for the ETPA, that would still be the law today, and would apply to former Mitchell-Lama apartments that were vacated after the VDL's effective date. A 1974 amendment *315 changed the language to read "housing accommodations which became vacant on or after July first, nineteen hundred seventy-one or which hereafter become vacant shall be subject to the provisions of the emergency tenant protection act of nineteen [hundred] seventy-four." (L 1974, ch 576, § 2.) The apartments described in that section are "made subject to" rent stabilization by the ETPA. Thus, RSL § 26-513 (a) applies to those apartments.
The Appellate Division cites Matter of Zeitlin v New York City Conciliation & Appeals Bd. (46 NY2d 992 [1979]), where we held that an apartment originally exempted from prior city rent control provisions was subject to the ETPA, as being particularly instructive. The present case is distinguishable from Zeitlin where the prior local provision exempted the housing accommodation from rent control and the tenant argued the unit was therefore subject to the ETPA. We agreed with the tenant that ETPA coverage immediately attached. The apartment in Zeitlin, however, was precisely the type of unit the State Legislature wanted included in the rent stabilization system. Since the choice was between no regulation and the ETPA, this Court chose to follow the intent of the State Legislature and the City Council that such an accommodation be regulated. In the present case, the choice is between the RSL, which would have governed the Private Housing Finance Law unit upon withdrawal in the absence of the VDL, and the ETPA, which sought to reverse decontrol legislation and bring more units into the system. The RSL was applicable to KSLM apartments that were inhabited between 1968 and the 1971 enactment of the VDL because it was the purpose of the RSL to regulate such housing.
DHCR concedes that the amended VDL subjects to ETPA coverage all KSLM apartments that became vacant after dissolution in 1998. DHCR maintains, however, that the RSL was suspended between 1971 and 1974 due to the Private Housing Finance Law. Therefore, decontrol did not apply. This argument is inconsistent with DHCR's other argument that the RSL applied to KSLM's apartments from the time of its enactment. We agree with the Appellate Division that it is inherently contradictory to argue KSLM apartments are currently "subject to RSL jurisdiction to the exclusion of ETPA jurisdiction, but not subject to the RSL for the purposes of vacancy deregulation" (Matter of KSLM-Columbus Apts. v New York State Div. of Hous. & Community Renewal, supra, 6 AD3d at 39). Therefore, we conclude that the KSLM apartments vacated on or after July 1, *316 1971 are subject to the ETPA and that as to those apartments pursuant to RSL § 26-513 (a), KSLM may apply to DHCR for "unique or peculiar" rent adjustments.
Accordingly, the order of the Appellate Division should be modified, without costs, in accordance with this opinion and, as so modified, affirmed.
Order modified, etc.
NOTES
[1] Section 26-512 (b) reads:

"The initial regulated rent for housing accommodations subject to this law on the local effective date of the emergency tenant protection act of nineteen seventy-four or which become subject to this law thereafter, pursuant to such act, shall be . . .
"(3) For housing accommodations other than those described in paragraphs one and two of this subdivision, the rent reserved in the last effective lease or other rental agreement."
[2] Section 2521.1 (j) reads in part: "For housing accommodations whose rentals were previously regulated under the PHFL, or any other State or Federal law, other than the RSL or the City Rent Law, upon the termination of such regulation, the initial legal regulated rent shall be the rent charged to and paid by the tenant in occupancy on the date such regulation ends."