Matter of West Side Marquis LLC v Maldonado (2026 NY Slip Op 01023)

Matter of West Side Marquis LLC v Maldonado

2026 NY Slip Op 01023

Decided on February 24, 2026

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: February 24, 2026

Before: Kern, J.P., Friedman, Rodriguez, Pitt-Burke, Rosado, JJ. 

Index No. LT-052122-20/NY|Appeal No. 5365|Case No. 2024-06155|

[*1]In the Matter of West Side Marquis LLC, Petitioner-Respondent,
vCarlos Maldonado, Respondent-Appellant, John Doe et al., Respondents.

Manhattan Legal Services, New York (Thomas J. Honan of counsel), for appellant.
Rosenberg & Estis, P.C., New York (Ethan R. Cohen of counsel), for respondent.

Order, Appellate Term of the Supreme Court, First Department, entered on or about February 23, 2024, which reversed the order of the Civil Court, New York County (Daniele Chinea, J.), entered on or about August 5, 2022, granting respondent-tenant's cross-motion for summary judgment dismissing petitioner-landlord's holdover petition, reinstated the petition and remanded to the Civil Court for further proceedings, unanimously reversed, on the law, without costs, and respondent-tenant's cross-motion for summary judgment dismissing the petition granted. The Clerk is directed to enter judgment accordingly.
In April 2005, the apartment building at issue exited the Mitchell-Lama program and became subject to rent stabilization laws. To facilitate the building's transition out of the Mitchell-Lama program, the nonparty predecessor landlord filed an application with the New York State Division of Housing and Community Renewal (DHCR) under Rent Stabilization Law (RSL) § 26-513(a) "for adjustment of the initial legal regulated rent" for apartments in the building. By rent-stabilized lease dated July 15, 2005, the predecessor landlord leased an apartment to respondent-tenant's grandmother for a two-year term. The tenant, who had lived in the apartment with his grandmother since 1988, was listed as a co-occupant.
By agreement dated December 1, 2006, the predecessor landlord entered into a settlement agreement with certain tenants, including the tenant's grandmother, to rent their apartments at a legal regulated rent of $500 per room per month (the WSM Agreement). The terms of the WSM were ratified by DHCR order dated December 29, 2006 (the DHCR Order). Under paragraph 2(B) of the DHCR Order, the parties agreed that the signatories would pay a preferential rent, denominated the actual collectible rent (ACR), applicable solely to those tenants and their qualifying successors.[FN1] It is undisputed that the tenant is not entitled to rely on the ACR as set forth in the WSM Agreement because he was not at least 28 years old on December 1, 2006, as is required under paragraph 3(A)(iii) of the DHCR Order.
As relevant here, in the last renewal lease signed by the tenant's grandmother, dated August 17, 2015, she elected to renew for a one-year term commencing on November 1, 2015 and ending on October 31, 2016 at a legal regulated rent of $2,429.53 per month and an ACR of $791 per month. The tenant's grandmother died in June 2016.
In 2017, the landlord commenced a holdover proceeding against the tenant. By order entered July 16, 2018, the Civil Court held that the tenant was the lawful successor to his grandmother's rights and therefore entitled to receive a renewal lease in his name. The tenant, however, was not offered a renewal lease until November 2019.
The Housing Stability and Tenant Protection Act (HSTPA) was enacted on June 14, 2019 and became effective immediately (HSTPA [L 2019, ch 36]). The HSTPA restricts a landlord's right to withdraw a previously offered preferential rent, even if properly preserved in the lease. Specifically, Rent Stabilization Law § 26-511(c)(14) provides that for "any tenant who . . . is or was entitled to receive a renewal or vacancy lease" as of the date of the HSTPA's enactment, "the amount of rent for such housing accommodation that may be charged and paid shall be no more than the rent charged to and paid by the tenant prior to that renewal, as adjusted by the most recent applicable guidelines increases and any other increases authorized by law."
In or about September 2019, the landlord commenced another holdover proceeding against the tenant, which was voluntarily discontinued. As stated above, on or about November 7, 2019, the landlord offered the tenant a renewal lease in his name for a one-year term commencing March 1, 2020 at a legal regulated rent of $2,481.62. The renewal did not include an ACR amount. The tenant rejected the renewal lease and, by 15-day notice of termination dated January 8, 2020, the landlord terminated the tenant's lease effective January 29, 2020.
On January 30, 2020, the landlord commenced the instant holdover proceeding seeking a judgment of possession and warrant of eviction to remove the tenant for failure to execute the renewal lease. As relevant here, the Civil Court denied the landlord's motion under CPLR 3212 for summary judgment and under CPLR 3211(b) to dismiss the tenant's affirmative defenses. The Civil Court granted the tenant's cross-motion to the extent of dismissing the petition on the basis that the tenant was entitled to a renewal lease at the time the HSTPA was enacted, warranting its application to require the landlord to offer the renewal on the same terms and conditions as the grandmother's prior lease. The landlord appealed to the Appellate Term.
By order entered February 23, 2024, the Appellate Term reversed and reinstated the petition for further proceedings, finding that the HSTPA did not apply because the tenant's entitlement to a renewal lease arose prior to the HSTPA's enactment.
We disagree. Where a landlord fails to offer a renewal lease, the rights under the expiring lease continue to apply (Rent Stabilization Code (9 NYCRR) § 2523.5[d] ["(T)he failure to offer a renewal lease pursuant to this section shall not deprive the tenant of any protections or rights provided by the RSL and this Code and the tenant shall continue to have the same rights as if the expiring lease were still in effect"]). Where a renewal lease is not made in a timely fashion, "courts have repeatedly upheld . . . allowing the renewal lease increase to take effect only prospectively" (24 Fifth Ave. Assoc. v New York State Div. of Hous. and Community Renewal, 191 AD2d 331, 331 [1st Dept 1993], lv denied 82 NY2d 652 [1993]). Accordingly, the Appellate Term should have concluded that the tenant's succession rights under the prior lease signed by the tenant's grandmother continued to apply until he was offered a renewal lease on November 7, 2019 after the passage of the HSTPA. As the HSTPA applies to tenant's succession rights, his cross-motion dismissing the petition should have been granted on the basis that he was entitled to a lease at the amount of rent paid under the prior lease signed by his grandmother (Rent Stabilization Law § 26-511[c][14]).
The landlord's arguments to the contrary are unavailing. Initially, application of the HSTPA to the instant action does not result in an impermissible retroactive effect because the renewal lease offer was made after the HSTPA came into effect in June 2019 (see Matter of West Pierre Assoc. LLC v Harvey, 241 AD3d 413, 413 [1st Dept 2025] ["(T)here is no cause for us to engage in a constitutional retroactivity analysis in the application of the HSTPA in this 2022 nonpayment proceeding, as the tenant's first lease commenced December 1, 2020, after the HSTPA's enactment"]). Moreover, the return to the legal regulated rent from the ACR set forth in the WSM Agreement does not fall within the category of "any other increases authorized by law" under Rent Stabilization Law § 26-511(c)(14). "Expressions such as 'allowed by law' as used in statutes refer exclusively to the statute law of the State unless, by the purposes of the statute where the words are used, a broader signification is required" (Board of Educ. of Union Free School Dist. No. 6 v Town of Greenburgh, 277 NY 193, 195 [1938] [internal citations omitted]). Here, the DHCR Order is an administrative determination, not a statutory law. Although DHCR appears to have come to a different conclusion in at least one case involving another apartment in the building, this Court is not bound by an agency's statutory interpretation (see Matter of KSLM-Columbus Apartments, Inc. v New York State Div. of Hous. and Community Renewal, 5 NY3d 303, 312 [2005]).
Further, the DHCR Order setting the legal regulated rents for apartments in the building and incorporating the terms of the WSM Agreement does not have preclusive effect pursuant to the doctrines of administrative finality, res judicata or collateral estoppel because it was issued in a proceeding to reset the legal regulated rent, not one determining whether the landlord can disregard the ACR notwithstanding the HSTPA (cf. Gersten v 56 7th Ave. LLC, 88 AD3d 189, 203 [1st Dept 2011], appeal withdrawn 18 NY3d 954 [2012]). In any event, the record does not reflect the tenant's involvement in the 2006 DHCR proceedings, meaning he did not have a full and fair opportunity to litigate in the prior proceeding (see Ryan v New York Tel. Co., 62 NY2d 494, 501 [1984]).
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: February 24, 2026

Footnotes

Footnote 1: The DHCR Order also states in relevant part, "This Order is issued pursuant to the application and stipulation and is specific to the address and docket referenced above and has no precedential effect on any other application nor establishes any policy of [DHCR]."